THE STATE, ALLISON, RELATOR, v. BLAKE.

1. All persons who are within the class designated by the constitution are entitled to vote for all officers elective by the people, whether the offices to be filled be created by the constitution or by legislation.

2. Such class of voters cannot be diminished or enlarged by the legislature.

3. Consequently, a statute cannot confine the right to vote for road commissioners to the freeholders of the district nor extend it to females or to non-residents of the district.

Information in the nature of a *quo warranto.*

Argued at February Term, 1894, before BEASLEY, CHIEF JUSTICE, and Justices VAN SYCKEL, GARRISON and LIPPINCOTT.

For the relator, *Joseph D. Bedle* and *George R. Dutton.*

For the defendant, *William M. Johnson.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.    This is a procedure to test the title of the defendant to the office of road commissioner in the First district of Englewood township.

The title thus challenged is claimed to exist by virtue of an election held under the act entitled "An act concerning public roads and parks and creating boards for the control and management of the same," approved March 1st, 1893. *Pamph. L., p.* 69.

The main object of this statute is to supersede, by the introduction of new methods, the system theretofore prevailing for the formation and reparation of the public highways by the well-known township officials. The fashion of this substitute is this: The township committee of the several townships of the state are required to divide " their respective townships into convenient road districts," and thereupon to " call an assembly in each of said districts " " of the freeholders of said district" upon a certain prescribed notice. The section of the act containing these directions then proceeds in these words, viz. : "At which assembly, after being organized, the said freeholders so assembled shall elect by ballot a suitable person, who shall be a legal voter in the township and a freeholder and resident in the district for which he is nominated, as a road commissioner for said district for the term of three years." The further provision is that the commissioners thus chosen shall be known as the public road board ; that they shall each take an oath of office,

and a certain compensation shall be paid to them by the township collector; that they shall have the "same duties and be subject to the same penalties as overseers of the highways in the said township now have or heretofore had," and, in addition, "shall have the same powers, perform the same duties and be subject to the same obligations and penalties as the township committee now have, had, perform or performed, or are or were subject to in relation to the public highways, and, in addition thereto, shall have a general and exclusive supervision, control and management of the public highways and sidewalks in said township," &c.

Besides the powers thus specified, there are others, of a similar character, conferred upon this newly-created road board.

It appears by the record before the court that, in pursuance of the statute in question, the township of Englewood was divided into five road districts, and that in Number 1 of these the defendant was declared elected a commissioner, and is now in the execution of the functions of such office. The legality of this election is the question to be resolved.

It will be perceived, from the outline of the act as above given, that the elective franchise, in these particular cases, is conferred exclusively upon "the freeholders in said district." At the election now under consideration, the chairman of the assembly ruled that all persons of full age, whether men or women, who resided in the township of Englewood, and who owned lands in said district, should be permitted to vote, and all other persons should be excluded from voting.

The supervenient inquiry arising from an election so conducted is, obviously, whether the legislature has the power to vest in a special class of persons the right to fill the office with which we are now concerned. The act explicitly declares that no vote can be given except by a freeholder of the district.

By article 2 of the constitution of the state, the right of suffrage is thus defined: "Every male citizen of the United States, of the age of twenty-one years, who shall have been

:a resident of this state one year, and of the county in which he claims his vote five months, next before the election, shall be entitled to vote for all officers that now are or hereafter may be elective by the people." With the exceptions enumerated in the proviso we have, at present, no concern.

It cannot be denied that the office now in question falls within the terms of this constitutional definition, for it is plainly an office elective by the people.

Notwithstanding the universality of these expressions, it is insisted on the part of the defendant that the provision is applicable only to such offices as are created by the constitution itself, and not to those that come into being through legislation. But such a contention is, it is deemed, plainly untenable. The constitutional language is clear and unambiguous, and there is not a syllable of the instrument that throws it in doubt. In the presence of such a fact, there is no room for construction. Under such circumstances, the rule of reason as well as of law peremptorily requires that the plain language of the primary law must be taken to express the purpose of its framers. "Possible, or even probable meanings," says Professor Cooley, "when one is plainly declared in the instrument itself, the courts are not at liberty to search for elsewhere." *Cooley Const. Lim.*, § 55. In view of this principle, that should never be overlooked, it is impracticable to transmute the general declaration of the constitution that every citizen possessed of certain qualifications shall be entitled to vote for all officers elective by the people into a right to vote only for a certain class of officers. To say that the phrase "all officers" means all constitutional officers is conspicuously to interpolate the clause and not to interpretate its language. And, indeed, if we scrutinize more closely the phraseology of the constitutional adjustment in question, we will find that it expressly rejects this narrow construction under criticism. The description, "all officers that now are or hereafter may be elective by the people," will not consist with the theory that only constitutional offices are embraced in its terms, for if an office be made elective by the constitu-

tion it cannot, with any propriety whatever, be referred to as an office that may thereafter be elective. Such an expression is congruous with offices to be called into existence legislatively, but it is repugnant to the state of an office created by the constitution itself.

Both the general and particular indications, therefore, of the clause are rejective of the theory of the defence.

And, again, if the constitutional language touching this subject had been deemed ambiguous or indistinct, still all reasonable inference to be deduced from the scope and purpose of the instrument would have led to the same result as that above expressed. In view of such considerations, it would appear to be improbable in the extreme, that while, in the fabrication of the primary law, careful provision should be made in regulation of the suffrage in the election of constitutional officers, no method whatever should be established with regard to the elevation into public position of the numerous and important functionaries necessary to local government. In every American system of laws there must be, as it would seem, a recognition, express or implied, of the existence of institutions effectuating in the people the right of local self-government. Such instrumentalities always have been, and probably always will be, necessary parts of the machinery of state government. They are invested with large powers, which are exercised by officials chosen by the community. In such a posture of things, it is scarcely rational to suppose that the framers of the constitution, in regulating the right of suffrage, should make provision for its exercise with respect to the smallest of constitutional offices, such as constables and justices of the peace, and should, at the same time, leave at large, without adjustment in this respect, the act of filling the highest municipal positions, such as mayoralties and city judgeships. The external indications of intention accord with the language of the constitutional provision now being considered, so that we think that the right of suffrage, with respect both to constitutional and statutory offices, is conferred by it on that class only that is

comprehended within its definition. A male citizen of the United States, of the age of twenty-one years, who has been a resident of this state one year, and of the county in which he claims his vote five months, next before the given election, is entitled to vote for all officers that are elective by the people, whether such offices are created by the constitution or by legislation. Such voter, however, with respect to an election in a district that is not co-extensive with the county, must, by necessary implication, from the foregoing definition, be a resident of such district, for he could not reasonably be said to claim the right to vote in the county unless he were such resident. Such has been the construction that has always been put upon this clause of the constitution, and it is the corner-stone in the foundation of all our municipalities.

The view thus stated is in harmony with the expression of opinion in this court in the case of *State* v. *Deshler*, 1 *Dutcher* 177. In that case, Mr. Justice Elmer says, referring to the constitutional provision before us, that "this applies not only to officers whose election is provided for by the constitution, but to all who are or may be elected by virtue of an act of the legislature."

The class of voters at official elections being thus defined by the constitution, it is not competent for the legislature either to enlarge or to diminish such class. The authorities, it is believed, are unanimous to this effect *Cooley Const. Lim.,* § 64.

The provision, therefore, in the present statute, authorizing the election in controversy by the resident freeholders of the district, is a palpable alteration of the constitutional scheme, and the proceedings under it are, consequently, invalid. Judgment of ouster must pass against the defendant.

Before closing, it is proper to say that the general purpose that this statute is designed to effect has not been considered with respect to its legal feasibility. The attempt here is to lodge in the class of freeholders the exclusive right to lay out and repair the public highways and to raise and expend the appropriate revenues. It is founded in a claim that the

legislature has an unlimited power to establish in a few persons the administration of a branch of government to the exclusion of the many. Such a prerogative would seem to have no limits, for if it can be conferred on citizens owning freeholds, it can, at the will of the lawmaker, be given to non-freeholders, or to the class who are without property, real or personal. But the subject is referred to only for the purpose of saying that it is one of great importance and that it has not been discussed by counsel, and has, consequently, not been considered by the court.

The title of the relator has not been and could not be put in issue by these proceedings, which are not on the part of the attorney-general.

The defendant has no title, and judgment must pass against him.