PATRICK McARDLE AND SAMUEL D. DICKINSON, DEFENDANTS IN ERROR, v. THE MAYOR AND ALDERMEN OF JERSEY CITY, PLAINTIFFS IN ERROR.

Argued June 27, 1901—Decided July 2, 1901.

1. The act of March 22d, 1901 (*Pamph. L., p.* 408), entitled "An act to establish an excise department in cities of the first class in this state," applies only to cities of the first class. It is not for that reason in violation of the constitutional provision prohibiting private, local and special laws regulating the internal affairs, &c. A classification on the basis of population in statutes relating to the machinery and powers of municipal government is legitimate where population bears, as it does in this instance, a reasonable relation to the necessities and proprieties of municipal government.

2. Article II., paragraph 1 of the constitution, which regulates and secures the right of suffrage, provides that every voter shall be entitled to vote for all officers that now are or hereafter may be elective by the people. The act now under consideration provides for a board of excise commissioners consisting of four members, to be elected two members at each annual election for the term of two years, but that no ballot shall contain the names of more than one candidate. *Held,* (1) that the commissioners to be elected under this act are officers within the meaning of the constitutional provision; and (2) that the act now in question is in violation of the foregoing constitutional provision.

3. Where an act is in part constitutional and in part unconstitutional, if the parts are wholly independent of each other, that which is constitutional may stand and that which is unconstitutional may be rejected; but if the different parts of the act are so intimately connected with and dependent upon each other as to warrant a belief that the legislature intended them as a whole, and some parts are unconstitutional, all the provisions which are thus dependent upon each other must fail.

4. The title of this act is "An act to establish an excise department in cities of the first class." It expressly provides that the excise department shall consist of four persons, elected in the manner therein provided. The election of a board in the manner provided in the act is essential to "establish an excise department" under the provisions of the act. The manner in which this board is to be established being in violation of the constitution, the entire scheme of legislation embodied in the act must fail.

5. By the writ of *certiorari* in this case a resolution of the board of aldermen that, in the absence of this act, was regular and valid, was brought to the Supreme Court. That court, on the hearing of the writ, set aside the resolution, on the ground that such munici-

pal action was not permitted by the act in question. That judgment of the Supreme Court is now before this court, and we cannot determine the propriety of the judicial action of that court without considering the force and effect of the act, and, consequently, its validity under constitutional prescriptions.

On writ of error to the Supreme Court.

The legislature at the session of 1901 passed the following act:

"1. In all cities of the first class in this state there shall be and hereby is established a board of excise commissioners to consist of four persons for the terms hereinafter specified, each of whom shall be elected at large in such city as hereinafter provided.

"2. Within the time provided by law, before the election held next after the passage of this act for the election of municipal officers in any city of the first class, two persons shall be nominated for excise commissioners, one for a term of two years and one for a term of one year, by each political party or petitioning body of citizens having the right by law to nominate candidates for municipal offices, to be voted for at such election; and at such election the two persons receiving the highest number of votes for excise commissioner for each of said respective terms shall be the duly elected excise commissioners for the terms so specified; such commissioners shall be elected in the same manner as other municipal officers in said city, subject, however, to this proviso: that no ballot shall contain the name of more than one commissioner for each of said terms; the terms of office of said commissioners shall begin at twelve o'clock noon, on the first day of January next succeeding their election, and expire at twelve o'clock noon on the first day of January next succeeding the election of their successors respectively.

"3. Within the time prescribed by law, before each election thereafter held for the election of municipal officers in cities of the first class, one person shall be nominated for excise commissioner for the two-year term herein designated, by each political party or petitioning body of citizens having

the right by law to nominate candidates for municipal offices, to be voted for at such election; and at such election the two persons receiving the highest number of votes for excise commissioner for said term shall be the duly elected excise commissioners for the term so specified, and shall hold office for two years, and until their successors are elected; but at such elections, after the first, no ballot shall contain the name of more than one person for excise commissioner.

"4. Any vacancy in such board occurring from any other cause than the expiration of a term, shall be filled for the unexpired term thereof by the governor of this state, who shall appoint a resident legal voter of such city, but such appointee shall be taken from the same political party as his predecessor.

"5. The annual salary of such commissioners shall be one thousand dollars each, and shall be paid to them by the city treasurer in monthly installments out of the license fees.

"6. Such board of excise commissioners shall have the sole power in such cities to license and regulate inns, taverns, restaurants, beer saloons and all places where any kind of vinous, malt, brewed. spirituous or other intoxicating liquor is sold, and after the licensing, to revoke and transfer such licenses under the laws of this state pertaining thereto, and under such regulations as said commissioners, subject to such laws may prescribe; and no license for such purposes within any such city shall be granted by any other authority, and any license purporting to be granted for such purposes by any other authority shall be unlawful and void; *provided, however,* that any such license lawfully granted before the passage of this act shall, subject to its conditions, remain valid and in full force and effect until the expiration of the term for which it was legally granted, but no such license shall be granted after the passage of this act, and before the date when such board of excise commissioners is by the terms hereof to organize, excepting for such intervening time, and one month thereafter, and nothing in this act shall prevent such board of excise commissioners from revoking any existing license for proper cause.

"7. The fees for licenses granted by said board of excise commissioners shall be such as are from time to time prescribed by law in such cities, and when the amount is by law discretionary with the licensing authority, then such as said commissioners shall .by ordinance provide, and all fees for licenses so granted by said commissioners shall be paid to the city clerk, who shall, in addition to his other duties, act as clerk of said commissioners, and such fees shall be by him. paid over to the city treasurer forthwith.

"8. Said board of excise commissioners shall have power, and after it is first organized no other authority in such city shall have power to pass, alter and repeal ordinances regulating the granting, revoking and transferring of such licenses, but the granting, revoking and transferring of individual licenses within the rules covered by such ordinances may be done by resolution; the acts of any three members of the board shall be the acts of the board; the board shall meet on stated days at least twice in each ·month.

"9. No application for license shall be acted upon by the excise commissioners until the fees required by law for such license shall have been deposited with the city clerk, and the excise commissioners shall act upon and grant or refuse each application for license within thirty days after the filing of such application and the payment of said fees, and in case any application shall be refused the fees so deposited shall be returned to the applicant, unless there shall be an appeal from the refusal or grant of such license, in which case said fees shall remain on deposit until the determination of such appeal.

"10. Any applicant who shall be refused a license by the said excise commissioners, or whose application for license is not granted or refused by such commissioners within thirty days from the date of filing thereof in accordance herewith, or any party who shall have opposed before said board the granting of a license, may within thirty days after such refusal or grant, or such failure to refuse or grant, appeal to the court of common pleas of the county in which such application is made, and said court shall forthwith summarily hear

the application *de novo,* and finally determine upon the grant or refusal of such application for license as the facts of the case may require, and certify its decision to said board of excise commissioners, who shall thereupon grant or refuse such license forthwith, in accordance with such decision of the court.

"11. Each of such commissioners shall, before he enters upon the duties of his office, take and subscribe an oath to faithfully, fairly and impartially perform the duties of his office, and to neither grant nor withhold a license by reason of the past or present political faith or affinity of any applicant therefor, and such oath shall be filed with the city clerk, there to remain of record, and perjury may be assigned thereon in case of any willful violation thereof.

"12. Said board of excise commissioners shall meet for organization annually on the first day of January, except when the first day of January is on Sunday, in which event they shall meet on the second day of January.

"13. All acts and parts of acts inconsistent with the provisions of this act are hereby repealed.

"14. This act shall take effect immediately."

Approved March 22d, 1901.   *Pamph. L., p.* 408.

The manner in which this litigation arose, and the questions presented by it, will appear in the opinion of the court.

For the plaintiffs in error, *John W. Queen* and *Allan L. McDermott.*

For the defendants in error, *Walter L. McDermott* and *Vredenburgh, Wall & Van Winkle.*

The opinion of the court was delivered by

DEPUE, CHIEF JUSTICE.   The board of aldermen of Jersey City, a city of the first class, passed a resolution May 7th, 1901, to the effect "That the licenses for keeping of inns and taverns and the sale of liquors, to be issued by this board on the first day of July, nineteen hundred and one, shall be issued for the period of one year from that date, and shall be

issued only upon the payment of the full amount of one year's license fee for each license issued." McArdle, a resident and taxpayer of Jersey City, sued out a *certiorari* to set aside this resolution as violating the act providing for an excise department in cities of the first class. Dickinson was subsequently admitted as a party prosecutor. The Supreme Court on this *certiorari* adjudged that the resolution of the board of aldermen should be set aside, on the ground that it was in conflict with the act under consideration. This writ of error is brought to review the judgment of the Supreme Court, assigning as error that the said act is unconstitutional—*first,* because it is a private, local and special law; *second,* because it violates the provisions of article II., section 1, of the constitution.

The act is entitled "An act to *establish an excise department in cities of the first class* in this state." It applies only to cities of the first class. The contention that it is based upon an insufficient classification is untenable. A classification on the basis of population in statutes relating to the machinery and powers of municipal government is legitimate where population bears, as it does in this instance, a reasonable relation to the necessities and proprieties of the municipal government. *Wanser* v. *Hoos,* 31 *Vroom* 482. This doctrine has been applied to sustain statutes relating to the police powers of municipalities, using that expression in its broadest sense. *Warner* v. *Hoagland,* 22 *Vroom* 62; *Mortland* v. *Christian,* 23 *Id.* 521; *In re Haynes,* 25 *Id.* 6; *In re Sewer Assessment for Passaic, Id.* 156; *Owens* v. *Fury,* 26 *Id.* 1; *Matheson* v. *Caminade, Id.* 4; *Baker* v. *Delaney, Id.* 9; *McLean* v. *Gibson, Id.* 11; *Wood* v. *Atlantic City,* 27 *Id.* 232; *McLaughlin* v. *Newark,* 28 *Id.* 298; 29 *Id.* 202.

This legislation does not infringe upon article IV., section 7, paragraph 11, of the constitution, which interdicts special laws regulating the internal affairs of towns and counties.

A question of more importance arises under the assignment of error that this act violates article II., section 1, of the constitution, and for that reason is void. Article II., section 1, regulates and secures the right of suffrage. It declares that

"every male citizen of the United States, of the age of twenty-one years, who shall have been a resident of this state one year, and of the county in which he claims his vote five months, next before the election, shall be entitled to vote for all officers that now are or hereafter may be elective by the people."

The construction of this constitutional provision, so vital to the existence of popular government, is not at all in doubt. The constitutional mandate is clear and distinct that every qualified voter "shall be entitled to vote for all officers that now are or hereafter may be elective by the people." So far as the construction of this constitutional mandate has been presented to the courts of this state there is entire unanimity in its construction. The decisions on that subject arose under these circumstances : The constitution provides that the members of assembly apportioned to any county shall be selected by the legal voters of the county. In *State* v. *Wrightson*, 27 *Vroom* 126, 199, it was held that an act of the legislature providing for the election in assembly districts of members of assembly apportioned to any county was unconstitutional and void. This decision was made on the ground that to every qualified voter was secured, by the fundamental law, the right to a voice in the election of all officers which, by the constitution or otherwise, are elective by the class of legal voters to which he belongs. In *Allison* v. *Blake,* 28 *Id.* 6, it was decided by the Supreme Court that all persons within the class designated by the constitution are entitled to vote for all officers elective by the people, whether the offices to be filled be created by the constitution or by legislation ; and that the class of voters who shall be entitled to the elective franchise cannot be diminished or enlarged by the legislature; and that, consequently, a statute which confined the right to vote for road commissioners to the freeholders of the districts, excluding qualified voters who were not freeholders, was unconstitutional. The same principle was adjudged in *Kimball* v. *Hendee, Id.* 307, with respect to the election of school trustees. The constitution of Ohio contains a provision similar to ours, that qualified voters shall be "entitled to vote at

all elections." It was held by the courts of that state that the constitutional right to vote at all elections is denied by a statute which provided for the election of four members of the board of police commissioners, but denied to any elector the right to vote for more than two persons for such commissioners. *State* v. *Constantine,* 42 *Ohio* 437; 9 *Am. & Eng. Corp. Cas.* 39. Indeed, the language of the prescription on this subject in our constitution is so explicit as not to admit of any other construction. In *Allison* v. *Blake,* 28 *Vroom* 6, 9, Chief Justice Beasley declared that "the constitutional language is clear and unambiguous, and there is not a syllable of the instrument that throws it in doubt. In the presence of such a fact, there is no room for construction. Under such circumstances, the rule of reason, as well as of law, peremptorily requires that the plain language of the primary law must be taken to express the purposes of its framers."

The act now under examination provides for a board of excise commissioners to consist of four persons, each of whom shall be elected at large in such city; and, by section 2, it is provided that "within the time provided by law, before the election held next after the passage of this act for the election of municipal officers in any city of the first class, two persons shall be nominated for excise commissioners, one for a term of two years and one for a term of one year, by each political party or petitioning body of citizens having the right by law to nominate candidates for municipal offices, to be voted for at such election; and at such election the two persons receiving the highest number of votes for excise commissioner for each of said respective terms shall be the duly elected excise commissioners for the terms so specified; such commissioners shall be elected in the same manner as other municipal officers in said city, subject, however, to this proviso: that no ballot shall contain the name of more than one commissioner for each of said terms." The section quoted relates only to the first election. Section 3 provides for future elections— that two members of the board shall be nominated in the manner specified in section 2, but that no ballot shall contain the name of more than one person for excise commissioner.

On its face, this act is plainly an infringement of that constitutional provision which secures to qualified voters the elective franchise.

· That the members of this board, when chosen by the people, are officers, is entirely clear. The act provides that these commissioners shall be elected in the same manner "as other municipal officers," and shall hold "office" for two years and have an annual salary of $1,000 each, and that each commissioner, before he enters upon the duties of his office, shall take and subscribe an official oath. These officials, elected as · municipal officers at a popular election, are also charged with responsible and important public duties. In *State* v. *Deshler*, 1 *Dutcher* 177, 182, trustees of school districts, constables and other township officers were declared to be officers within the meaning of this constitutional provision. A similar ruling was made with respect to school trustees, in *Kimball* v. *Hendee, supra,* and with respect to road commissioners, in *Allison* v. *Blake, supra.* In 5 *Cent. Dict.* 4091, *tit.* "*Office*," an office is described as "the right and duty conferred on an individual to perform any part of the functions of government, and receive such compensation, if any, as the law may affix to the service."

The argument of the counsel for the defendants in error that this is not an election, but an appointment by the legislature of persons to perform the duties of excise commissioners, who shall be selected in the manner pointed out by the act, if sound (which it is not), would enable the legislature to tamper with the elective franchise at its will, and the constitutional provision which was designed to secure to the qualified voters of the state the elective franchise would be made a nullity.

It is contended that if those parts of sections 2 and 3 which provide that no ballot shall contain the name of more than one commissioner, gives the act an unconstitutional effect, these words may be stricken out, leaving a board of excise commissioners consisting of four persons elected by the voters under the General Election law. The question is whether the court will be justified in making such a judicial excision of

an act of the legislature, which seems to be complete in all its parts and evinces a purpose inconsistent with that which would be accomplished by such a mutilation of the statute. "It is undoubtedly true that there may be cases where one part of a statute may be enforced as constitutional, and another be declared inoperative and void because unconstitutional; but these are cases where the parts are so distinctly separable that each can stand alone, and where the court is able to see and to declare that the intention of the legislature was that the part pronounced valid should be enforceable, even though the other part should fail. To hold otherwise would be to substitute for the law intended by the legislature one which they may never have been willing, by itself, to enact." *Poindexter* v. *Greenhow,* 114 *U. S.* 270, 304. "But if the different parts of the act are so intimately connected with, and dependent upon, each other as to warrant a belief that the legislature intended them as a whole, and that if all could not be carried into effect the legislature would not have passed the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent upon each other must fail." *Johnson* v. *State,* 30 *Vroom* 535, 539. The title of the act is quite decisive on this subject. It is entitled "An act *to establish an excise department* in, cities of the first class in this state." It expressly provides that the excise department should consist of four persons, elected in the manner "as herein provided." That it was the purpose of the legislature, in passing this act, to abolish the former method of constituting this board is manifest. Until commissioners are elected pursuant to the provisions of the act, there can be no excise department in the city to execute any of the provisions of this statute. The election of a board in the manner provided by the act is essential to "establish an excise department." It is quite clear, from the entire act, that an excise board consisting of four members, elected by the electors at large, was not contemplated in this legislative scheme.

The manner in which this board is to be established being

in violation of the constitution, the entire scheme of legislation embodied in the act must fail.

It is also contended, in the same connection, that the proper mode of relief is by all the qualified voters in the county presenting ballots at the election containing the names of the whole number of commissioners to be elected, and therefore that this court should not entertain this writ of error. It is apparent that such a procedure would give rise to the greatest confusion. How are the qualified voters to procure the printing of such ballots, and what assurance can be had that even a majority of the qualified voters would adopt this method of securing their right of suffrage, or that the election officers would receive the ballots? Embarrassment arising in this manner induced the Supreme Court, in *State* v. *Wrightson,* 27 *Vroom* 215, to entertain a proceeding, by way of *mandamus,* without a previous demand or refusal. It is there said that "to postpone the commencement of these proceedings [that is, by *mandamus*] until the time preceding the annual elections, at which the county clerk and the clerks of the cities and townships of the county are required to perform the duties devolved upon them under the election laws, would effectually prevent proceedings then instituted being practically of any avail."

The defendants in error prosecuted their writ of *certiorari,* and brought up to the Supreme Court a resolution of the board of aldermen that, in the absence of this act, was regular and valid. The Supreme Court, on the hearing of the writ of *certiorari,* set aside that resolution, on the ground that such municipal action was not permitted by the act in question. That judgment of the Supreme Court is before this court by the writ of error, and we cannot determine the propriety of the judicial action of the Supreme Court without considering the force and effect of the act under consideration, and, consequently, its validity under constitutional prescriptions.

The judgment of the Supreme Court should be reversed, and this act declared unconstitutional in its entirety.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, DEPUE (CHIEF JUSTICE), VAN SYCKEL, GARRISON, COLLINS, FORT, GARRETSON, BOGERT, ADAMS, VREDENBURGH, VOORHEES, VROOM. 12.