DENNIS C. BERRY, APPELLANT, v. H. G. WILCOX, APPELLEE.

FILED FEBRUARY 19, 1895.    No. 6052.

1. **Elections:** VOTING PLACE OF UNIVERSITY STUDENTS.  The fact that one is a student in a university does not entitle him to vote where the university is situated, nor does it of itself prevent his voting there.  He may vote at the seat of the university if he has his residence there and is otherwise qualified.

2. ———: ———: RESIDENCE.  One's residence is where he has his established home, the place where he is habitually present, and to which, when he departs, he intends to return.  The fact that he may at a future time intend to remove will not necessarily defeat his residence before he actually does remove.  It is not necessary that he should have the intention of always remaining, but there must be no intention of presently removing.

3. ———: ———: ———.  Persons otherwise qualified as voters who come to the seat of a university mainly for the purpose of obtaining an education, who are not dependent upon their parents for support, who have not the intention of returning to their parental home upon the completion of their studies, who are accustomed to leave the seat of the university during vacation, going wherever they might find employment, and returning to the university when the term opens, regarding the seat of the university as their home and having no purpose formed as to their movements after completing their studies, are entitled to vote at the seat of the university.

APPEAL from the district court of Lancaster county. Heard below before TUTTLE, J.

*Abbott, Selleck & Lane,* for appellant, cited: *Fry's Election Case,* 71 Pa. St., 302; *Dale v. Irwin,* 78 Ill., 170;

Berry v. Wilcox.

*Vanderpoel v. O'Hanlon,* 53 Ia., 246; *Pedigo v. Grimes,* 13 N. E. Rep. [Ind.], 703; *Biddle v. Wing,* Clarke & Hall, Digest of Contested Elections, 504; *Barnes v. Adams,* 2 Bartlett, Cases of Contested Elections, 760.

*Atkinson & Doty, contra,* cited: *Behrensmeyer v. Kreitz,* 135 Ill., 591; *Dale v. Irwin,* 78 Ill., 170; Paine, Elections, secs. 69, 70; *Sturgeon v. Korte,* 34 O. St., 535; *Putnam v. Johnson,* 10 Mass., 487; *Lincoln v. Hapgood,* 11 Mass., 350; *Sanders v. Getchell,* 76 Me., 158.

IRVINE, C.

At an election held in the city of University Place, in Lancaster county, April 7, 1891, Berry and Wilcox were candidates for city clerk. The whole number of votes cast was 116, of which Wilcox received sixty-three and Berry fifty-three. Berry instituted this proceeding to contest the election on the ground that illegal votes had been received on behalf of Wilcox sufficient to change the result. In the county court there was a judgment for the incumbent, from which the contestant appealed to the district court, where a hearing was had with the same result, and the contestant now appeals to this court. The parties entered into a stipulation in regard to the facts, and this stipulation constitutes the only evidence in the case. From the stipulation it appears that seventeen votes were cast for Wilcox by students of the Wesleyan University, which has its seat in University Place. The result depends upon the right of these students to vote, and their right depends solely upon the question of their residence in University Place, it being conceded that they had all other qualifications of voters.

The facts as to the residence of these students appear from the stipulation as follows: "That they had been attending Wesleyan University and living in University Place from the commencement of the school year, some time during the month of September, 1890; that their main

purpose in going to and remaining in University Place
was to attend said university for the purpose of obtaining
an education; that all the said students had, previous to
and immediately preceding the time they went to Univer-
sity Place for the purpose of attending the university, re-
sided with their parents in different parts of the state of
Nebraska, but were not dependent upon said parents for
their support; that each of the said students expected to
remain at said University Place during such time as their
studies demanded until they had completed their college
course; that none of the said students remained at said
University Place during the vacation, but went wherever
they could secure employment; that all of said students
were uncertain and undecided as to their future course or
place of residence upon the completion of their college
course; that they did not have any special residence in
view; that said students were all unmarried men without
any business relations or connections at any other place,
and that they were not engaged in any other business than
that of attending the university; that none of said students
were under parental control and that they regarded Uni-
versity Place as their home; that none of said students
had at the time of voting any intention of removing from
University Place before the completion of their studies,
and that when they took their summer vacation they ex-
pected to return to the university upon the opening of the
term." It is upon the foregoing facts that the question of
their residence must be determined.

Our attention is called to chapter 26, section 32, Com-
piled Statutes, which provides that the judges of election
and registrars of voters, in determining the residence of a
person offering to vote, shall be governed by certain rules
established in that section. But section one of article seven
of the constitution prescribes the qualifications of voters:
"Every male person of the age of twenty-one years or up-
wards belonging to either of the following classes, who

shall have resided in the state six months, and in the county, precinct, or ward, for the term provided by law, shall be an elector," etc.   It is the constitution, then, which requires residence as a qualification for voting, although the legislature may fix the term of residence required in a county, precinct, or ward.   What constitutes residence within the meaning of the constitution is, therefore, a judicial question and not one for the legislature.   The question is, what did the word "reside" mean when the constitution was adopted, not what the legislature may say it shall mean. This is very clear.   The constitution says likewise that "every male person," etc., shall be an elector.   It would be clearly incompetent for the legislature to extend this provision to females by passing an act declaring that in determining who are male persons, judges of election shall consider both men and women such.   We do not say that the section referred to has no force; merely that it cannot be accepted as in anywise enlarging or limiting the provisions of the constitution.   We do not even say that the rules prescribed by that section are not correct rules for determining the question of residence; but if they are so, it is because there are only declaratory of the previous law and not because the legislature has adopted them.   We therefore proceed with the inquiry without any special reference to this statute.   The generally accepted definition of "residence," when the term is used with reference to the qualification of voters, is synonymous with "domicile,"—"that place * * * in which his habitation is fixed, without any present intention of removing therefrom." (Story, Conflict of Laws, 43.)   The older cases and some of the modern ones require as an essential element the *animus manendi*, and construe this term as meaning an intention of always remaining.   The supreme court of Iowa must have adopted this rule in the case of *Vanderpoel v. O'Hanlon*, 53 Ia., 246, for in that case it was held that a student at the state university was not a resident of Iowa City, although he

did not know what he would do after he graduated, and was not aware that he would leave Iowa City. The case referred to is one of the latest cases in which this extreme view is taken, and the opinion cites with approval the *Opinion of the Judges*, 5 Met. [Mass.], 587, and *Fry's Election Case*, 71 Pa. St., 302. The former case we shall refer to later. *Fry's Election Case* is a carefully considered case, and its result was to hold that students of a college living where it is located, even though they be supported by themselves and emancipated from their father's family with no intention to return to his home, have not such residence as will entitle them to vote at the seat of the college. That case was, however, professedly based to a large extent on early definitions of the terms "inhabitant" and "freeman," as well as upon the debates in the convention which adopted the constitution; and as the reasoning proceeds upon ancient authorities the case should properly be considered as among the ancient cases. It is worthy of remark, however, that the statement of facts shows that the students came to the college for no other purpose than to receive an education and intended to leave after graduating; whereas, in the case before us it is only agreed that their education was the main purpose of the students in coming and that they had no purpose formed as to their movements after graduation.

In *State v. Griffey*, 5 Neb., 161, it was held that persons who went to a military post in Valley county for the purpose of working there, but without the intention of returning to their former domicile, acquired a residence. And in *Swaney v. Hutchins*, 13 Neb., 266, it was said: "The test of residence, when a party removes from one state to another, seems to be, did he remove from his former residence with the intention of abandoning the same?" In *Putnam v. Johnson*, 10 Mass., 488, it was held that a student at Andover, otherwise qualified and being emancipated from his father's family, was entitled to vote at Andover.

This case proceeded upon the ground that he had mani-
festly abandoned his former domicile, and must therefore
be domiciled at Andover, or no place.   The old theory of
*animus manendi* was perhaps first combated in that case,
the court saying: "In this new and enterprising country
it is doubtful whether one-half of the young men, at the
time of their emancipation, fix themselves in any town
with an intention of always staying there.   They settle in
a place by way of experiment, to see whether it will suit
their views of business and advancement in life; and with
an intention of removing to some more advantageous posi-
tion if they should be disappointed.   Nevertheless, they
have their home in their chosen abode while they remain."

A very instructive opinion was given by the justices of
the supreme judicial court to the house of representatives
of Massachusetts in 1843 (5 Met., 587); and while, of
course, this opinion is open to the criticism of being merely
a response to a legislative inquiry, and not an opinion deliv-
ered in the judicial determination of a case, still the high
character of the judges who signed it, as well as the sound-
ness of the views expressed, entitle it to great weight.
The question there proposed was, "Is a residence at a pub-
lic institution in any town in this commonwealth, for the
sole purpose of obtaining an education, a residence within
the meaning of the constitution which gives a person, who
has his means of support from another place either within
or without this commonwealth, a right to vote or subjects
him to the liability to pay taxes in said town?"   It was
said that none of the circumstances mentioned constitute a
test, nor are they very decisive upon the question; that
one's residence for the purpose of education would not give
one the right to vote if he had a domicile elsewhere, nor
would his connection with a public institution for the pur-
pose of education preclude him from voting, if his domi-
cile is there.   That what place is any one's domicile is a
question of fact; that if a student have a father living, if

he remain a member of his father's family, if he return to pass his vacations, if he be maintained by his father—these are strong circumstances repelling a presumption of a change of domicile. But if he be separated from his father's family, not maintained by him; if he remove to a college town and take up his abode there without intending to return to his former domicile, these are circumstances more or less conclusive to show the acquisition of a domicile in the town where the college is situated. The same view was taken in *Sanders v. Getchell*, 76 Me., 158.

The supreme court of Ohio, quoting Story's definition of domicile, adds: "It is not, however, necessary that he should intend to remain there for all time. If he lives in a place with the intention of remaining for an indefinite period of time as a place of fixed present domicile and not as a place of temporary establishment, or for mere transient purposes, it is to all intents and for all purposes his residence." (*Sturgeon v. Korte*, 34 O. St., 525.)

In *Dale v. Irwin*, 78 Ill., 170, the court said: "What is 'a permanent abode'? Must it be held to be an abode which the party does not intend to abandon at any future time? This, it seems to us, would be a definition too stringent for a country whose people and characteristics are ever on the change. No man in active life in this state can say, wherever he may be placed, this is and ever shall be my permanent abode. It would be safe to say a permanent abode, in the sense of the statute, means nothing more than a domicile, a home, which the party is at liberty to leave, as interest or whim may dictate, but without any present intention to change it."

These authorities, we think, present the law in its true aspect. The fact that one is a student in a university does not of itself entitle him to vote where the university is situated, nor does it prevent his voting there. He resides where he has his established home, the place where he is habitually present and to which when he departs he intends

to return.  The fact that he may at a future time intend to remove will not necessarily defeat his residence before he actually does remove.  It is not necessary that he should have the intention of always remaining, but there must co-exist the fact and the intention of making it his present abiding place, and there must be no intention of presently removing.  Now in the case before us these students came to University Place, their main purpose being to attend the university.  They were emancipated from their parents, apparently with no intention of returning to the home of their parents; they regarded University Place as their home, leaving it during vacation and going wherever they could obtain employment, with the intention of returning to University Place at the close of the vacation.  They were uncertain as to their course upon graduation and therefore had no particular future residence in view.  There can be no doubt that they had lost their residence at the homes of their parents, and they were men without a country, if they had not acquired one in University Place.  We think the county and district courts reached the correct conclusion on these facts in holding that these students had acquired a residence in University Place.

JUDGMENT AFFIRMED.