SIMEON J. THOMPSON ET AL., APPELLANTS, V. CHARLES H. JAMES ET AL., APPELLEES.

FILED SEPTEMBER 29, 1933. No. 28836.

*Sandall & Webster,* for appellants.

*Kirkpatrick, Good & Dougherty* and *John L. Riddell,* contra.

Heard before GOSS, C. J., DAY and PAINE, JJ., and CHASE and TEWELL, District Judges.

TEWELL, District Judge.

The relators filed an information in the nature of *quo warranto* against the respondents in the district court for York county, and from an order of the court sustaining a demurrer to that information and dismissing the action the relators have appealed to this court.

From the information it appears that York county, for a number of years, has been a county having township organization under the provisions of article 2, ch. 26, Comp. St. 1929 (Comp. St. 1929, secs. 26-201 *et seq.*). At some time prior to the general election held in November, 1932, the county had adopted the township supervisor system of government provided for by chapter 40, Laws 1907 (Comp. St. 1929, secs. 26-290 to 26-293). At the time of that election the county had twenty township supervisors, the territory outside of the city of York being divided into sixteen townships and that in the city of York being divided into four townships. The term of office of each of the twenty township supervisors was four years, and those in office in November, 1932, had been elected in such manner that the term of office of half of them expired in January, 1933, and of the other half in January, 1935. The relator Thompson was elected a township supervisor from Stewart township at the general election in November, 1930, and entered upon the duties of his office in Jan-

uary, 1931. The relator Richardson was elected township supervisor from the second ward of the city of York at the general election held in November, 1932, and unless prevented by matters hereafter mentioned, his term of office began in January, 1933. Both relators are alleged to have duly qualified for their respective offices. Each of the five respondents was a duly elected and qualified township supervisor and the term of office of each, with the exception of respondent Stilson, began in January, 1931. The term of office of respondent Stilson began in January, 1929, and he was defeated for reelection by relator Richardson in the general election in November, 1932.

Upon a petition for the submission of the question of the discontinuance of township supervisors at the general election in 1932, the county clerk caused to be printed on a special ballot the following:

☐ For Proposal to reduce number of supervisors from twenty to five.

☐ Against Proposal to reduce number of supervisors from twenty to five.

The special ballot upon which the proposal submitted appeared was one upon which there was submitted the question of the adoption of a measure creating a public safety commission proposed by initiative petition. At the election 3,186 voted "For" and 3,019 "Against" the proposal. At a meeting of the township supervisors, held on November 22, 1932, the county was divided into five supervisor districts, and the five respondents were selected by the township supervisors to constitute the county board. The five respondents organized themselves as a county board of district supervisors and, since their selection, have taken charge of the affairs of the county, to the exclusion of the relators. The petition alleges that the respondents usurp and invade the office held by the relators and that they had made application to the county attorney of York county to file a proceeding to recover their office and that such officer had refused so to do.

Sections 26-294 to 26-299, Comp. St. 1929, provide the procedure for discontinuance of a system of township supervisors. Section 26-296 provides: "The forms of ballots shall be respectively 'For continuance of township supervisors' and 'Against continuance of township supervisors,' and the same shall be written or printed on the regular ballots used at said election, and shall be counted and canvassed in like manner." Section 26-297 provides: "If it shall appear from the returns of said election that a majority of the votes cast on the question are against the continuance of township supervisors, then such system shall cease to exist in such county as soon as supervisors from each district are selected and qualified as hereinafter provided."

By section 26-298 it is provided that, when the township supervisor system shall cease, the county shall be divided into five supervisor districts, the corporate limits of the county seat being one district and the remainder of the county being divided into four districts.

Section 26-299 provides as follows: "The county boards in counties discontinuing the township supervisor system shall proceed in like manner, and in the same time and place, as the county commissioners are now required to proceed when township organization is adopted, to reestablish the district system, except that the supervisors residing in each district shall determine by lot which one is to continue as the supervisor from said district. In every other respect said district system shall be reestablished in said counties in like manner as when township organization is adopted."

One of the questions presented involves the validity of the election by virtue of which the respondents claim their right of office. Quotation of other sections of said article 2, to which reference is made in the above quoted section 26-299, would take more space than is justified by the degree of clarity thereby attained. It is apparent from the sections above quoted that the office of each township

supervisor in counties under township organization that have adopted the township supervisor system is completely abolished whenever a majority of votes cast upon the question authorized by statute are against the continuance of township supervisors and district supervisors are selected and qualified in the manner provided by said article. It must follow that the office of the district supervisor is an office newly created by the statute and the election and is distinct and apart from that of township supervisor theretofore existing. In the selection of respondent Stilson as a district supervisor at the meeting of township supervisors on November 22, 1932, the statute seems to have been so interpreted by the township supervisors. His term of office theretofore held by him expired by operation of law in January, 1933, yet he was selected to hold the office of district supervisor until a much later date.

The question authorized by statute provided for the complete abolition of township supervisors, while the question submitted to the voters provided for reducing their number from twenty to five. A rule uniform in all the states is that an election held without affirmative constitutional or statutory authority is a nullity. 20 C. J. 95, and cases cited under note 4. In accord with this rule is the rule to the effect that an election upon a proposition submitted to voters is void, if the proposition submitted is materially different in substance than that authorized by Constitution or statute. *People v. Snedeker,* 282 Ill. 425; 20 C. J. 149; *People v. Myers,* 256 Ill. 529. Each of the two rules above mentioned is necessary to a continuance of our form of government. Whether or not the electorate understood the proposition submitted is immaterial, if its submission was not authorized by constitutional or legislative authority, or if its substance is not that of one authorized. It is true that a system of government should not be perverted from its proper function by any rule that increases impediments to justice without the warrant of clear necessity. However, to pro-

tect the electorate from that which aids self-destruction is a warrant of clear necessity. If a question not authorized may be submitted to popular vote, or a question authorized be changed in substance and submitted, a chaotic condition may easily come about. Cost of government as well as impediments to justice would thereby be multiplied. The departure from the statute rendered the election a nullity, on account of the question submitted not having been authorized by law and on account of its changing the substance of the question authorized.

The respondents urge that the departure from the statute was of such nature as to leave the intent of the electorate discernible and that, if so, the result should be upheld. Provisions of election laws are, for the most part, mandatory, if enforcement is sought in a direct proceeding for that purpose before an election held under such provisions, but after such an election are directory only, in support of the result, unless strict compliance is declared by the law authorizing the election to be necessary to a valid election or unless the provision affects an essential element of the election. *State v. Russell*, 34 Neb. 116; *Tuntland v. Noble*, 30 S. Dak. 145; 20 C. J. 181. Assuming, for a discussion of the application of the last mentioned rule, that the question as submitted in the case at bar was authorized by legal authority, and also assuming that the substance of the question authorized was not changed by the form of the question as submitted, it may be said that, even though the statute is construed as directory, such construction must not allow such a departure from the provisions of the statute as leaves the mind in doubt as to how the election would have resulted if such departure had not occurred. 9 R. C. L. 1091, sec. 101; 20 C. J. 181; *Tuntland v. Noble, supra; Rideout v. City of Los Angeles*, 185 Cal. 426. If the form of question authorized had been used, an affirmative or "For" vote would have been counted for a continuance of township supervisors, and a negative or "Against" vote would have been counted against the con-

tinuance of township supervisors. By using the form of question as submitted the reverse of such condition is made true. Then, too, the form used, having provided that the "For" vote should be counted as against the continuance of township supervisors, contained the "For" at the top position on the ballot, which is probably a favorable position. The proposition as submitted was carried by a narrow margin. Who can say that doubt as to how the election would have resulted, had the prescribed form of question been submitted, does not exist, or that the intent of the electorate is clear? That the question was submitted upon a special ballot rather than upon the regular ballot as provided by the statute at least does not lessen such doubt, especially when the only votes counted were those upon the question, regardless of how many voters cast the regular ballot at the election. Whether or not the use of a special ballot instead of the regular ballot would have by itself made the election a nullity, we are not called upon to decide. We do hold that the departure from the statute in this case, when considered in its entirety with the result, was of such a nature as to leave doubt as to whether or not it itself did not bring about a different result than would have occurred had no such departure been made, and rendered the election a nullity, even though the statute prescribing the form of ballot is construed after the election as directory.

Respondents claim that relators do not have legal capacity to maintain this action, and in this connection argue that, if the election was void, then the only persons doing wrong are those members of the twenty township supervisors who are failing to function as officers. This argument disregards the alleged fact that respondents are functioning as the county board by themselves to the exclusion of relators. It also assumes the office now claimed by each respondent to be the same office such respondent held as township supervisor. By section 20-21,137, Comp. St. 1929, a citizen of the state claiming

an office that is usurped or invaded by another may maintain this form of action in a district court with or without the consent of the prosecuting attorney, upon his own relation. The relators are not claiming that respondents as a part of the old board of township supervisors have invaded any office, but rather that respondents claim to hold newly created offices and to thereby constitute a complete board to the exclusion of relators, and are thereby invading the office of relators. The acts of respondents are as much an invasion of the office of relators, when they claim under a void election to hold offices, which, if existent, would supersede the offices of relators, as would be like acts done by private citizens under no claim of right. The statute above cited is quoted in the case of *Eason v. Majors*, 111 Neb. 288. Relator Thompson alleged possession of his office since January, 1931, and relator Richardson alleges his election at the general election in 1932 and qualification by filing of oath and bond. ` Incidentally the action determines the existence of the office claimed by each respondent, but it is nevertheless an action to try title to the office held by relators and invaded by respondents, who assume to act as a complete board. Relators are given capacity to maintain this action by the above cited section of the statute upon their own relation, and are not required to comply with section 20-21,113, Comp. St. 1929, which provides for such an action by an elector, upon refusal of the prosecuting officer to bring the action and upon the giving of bond for costs, attorney's fee and prosecution without delay.

An improper joinder of parties, both as to relators and as to respondents, is claimed. When the rights of two or more relators to separate offices depend upon the same question of law and fact, they may properly join as relators in one action, and two or more persons may be joined as respondents, when the complaint against each is based on the same acts. 51 C. J. 340; *School Trustees v. Barker*, 164 N. Car. 382; *Bonynge v. Frank*, 89 N. J.

Law, 239; *Lockard v. People*, 80 Colo. 31; *State v. Kearn*, 17 R. I. 391.

We have examined other arguments advanced by respondents in support of the order dismissing the relators' action and find that they do not set forth legal justification thereof. The order dismissing the action is reversed and the cause remanded for proceedings in accord herewith. Costs in this court are taxed to respondents.

REVERSED.