PETER MEHRENS, APPELLEE, V. ELECTION CANVASSING BOARD OF DOUGLAS COUNTY ET AL., APPELLANTS.

278 N. W. 252

FILED FEBRUARY 25, 1938. No. 30174.

*Swarr, May & Royce, James T. English* and *Jack W. Marer*, for appellants.

*Benjamin S. Baker, Edward Shafton* and *William Raab, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ.

ROSE, J.

This is an election contest between Peter Mehrens, plaintiff and contestant, and George W. Pratt, defendant and contestee, in the district court for Douglas county to determine which one of the two was elected a member of the board of education of the school district of Omaha at the general election November 3, 1936. Both were eligible and their names were printed on the official ballots with the names of 42 other candidates for membership on the school board. Electors were at liberty to vote for six candidates only—the number to be elected.

Each party to the contest pleaded that he was elected and that the other was defeated. The main issue between the two, therefore, was: Who was elected? The burden of proof was on contestant.

The issue of illegal voting was confined to the single voting precinct of Dundee, where school district ballots were handed to some of the electors residing in the voting precinct, but outside the school district, returned to the judges of election and by them placed in the ballot box.

Approximately one-third of the Dundee voting precinct is outside the Omaha school district, but all of it is in Douglas county. Ballots were cast by 772 voters in Dundee precinct and two-thirds of them resided within the school district. Contestant Mehrens received 74 votes in Dundee precinct and contestee Pratt 132 votes therein. Other candidates for membership fell behind. Excluding that portion of the school district outside of Dundee precinct, contestant received 16,985 votes and contestee 16,936.

The Douglas county canvassing board canvassed the

school district votes with results as follows: Dundee precinct, Pratt, 132; Mehrens, 74. School district of Omaha, Pratt, 17,068; Mehrens, 17,059. The election of Pratt as one of six members of the school board was certified by the canvassing board to the Douglas county election commissioner who issued to him a certificate of election. The ballots cast for school district officers in Dundee precinct by nonresidents of the school district did not show by whom any vote was cast nor did any other record of the election show that fact.

The facts outlined were either shown by stipulation of the parties to the contest or were established by other evidence. Upon a spirited trial the district court found that at least 98 illegal votes were cast at the school district election in Dundee precinct; that the election officers therein committed fraud in giving school district ballots to nonresidents of the school district, in receiving them, in placing them in the ballot box with legal ballots and in counting the illegal ballots; that such fraud and the illegal ballots cast were sufficient to change the result of the election. One of the findings reads thus:

"The court further finds that there is no way by which, from all the facts in the case, there can be determined the number of illegal votes cast at said election for the said members of the said board of education; the court further finds that all votes cast at said election for members of the school board in said precinct should be disregarded and set aside and not counted for either of the said candidates, Peter Mehrens or George W. Pratt."

It was decreed that George W. Pratt, contestee, was not elected and that Peter Mehrens, contestant, was elected. The election commissioner was ordered to issue a certificate of election to Mehrens. Pratt appealed.

The position of contestee on appeal is illustrated by excerpts from the law of election contests as he understands it:

"While it is well settled that where enough illegal votes are cast at an election to change the result or leave it in

doubt the election is void, yet it is equally well settled that the result of an election will not be disturbed because of illegal votes received unless the aggregate of such votes would change the result. If the true result can be ascertained by eliminating the illegal votes the election will be upheld. In order to reject illegal votes it must appear for whom they were polled; they cannot be taken from the majority candidate unless it is proved that they were polled for him. Neither should the entire vote of a precinct be rejected because of illegal votes cast, where there has been no effort to purge the returns of such votes by showing for whom they were cast." 20 C. J. 182.

"The contestant had the burden, and that burden was only partially sustained by showing that illegal votes were cast. In order to make out his case he must show for whom they were cast." *Napier v. Cornett,* 24 Ky. Law Rep. 576, 68 S. W. 1076.

This doctrine is in harmony with the law of Nebraska. The statute relating to election contests provides:

"The court may require any person called as a witness who voted at such election to answer touching his qualifications as a voter; and if he was not a qualified voter in the county where he voted, then to answer for whom he voted; and if the witness answer such questions, no part of his testimony on that trial shall be used against him in any criminal action." Comp. St. 1929, sec. 32-1030.

The remedy by contest is available, "When illegal votes have been received or legal votes rejected at the polls sufficient to change the result." Comp. St. 1929, sec. 32-1002.

Contestant, in making his case on the controverted issue that illegal votes sufficient to change the result of the election were placed in the ballot box and counted, was required to prove both the illegal voting and the candidates for whom the illegal votes were cast. *White v. Slama,* 89 Neb. 65, 130 N. W. 978; *Mosiman v. Weber,* 107 Neb. 737, 187 N. W. 109. There is no evidence to identify any candidate for whom illegal votes were cast. By rejecting the entire

vote of Dundee precinct for school district officers on the ground that 98, or at most 102, illegal votes were cast, 514 legal electors therein were disfranchised at the school district election after they gave lawful expression at the ballot box to their choice for school officers. These legal voters did not commit any election fraud or any other wrongful act. It is the policy of the law to protect them in their civil rights. That is a purpose for which courts were established. Their processes may be directed to illegal voters to learn the truth in the administration of justice. The candidates themselves were not guilty of any fraud that forfeited their rights. There is no evidence that any election officer or other person intentionally attempted to influence any voter in the casting of a ballot or to corrupt the election. The parties to the contest stipulated:

"By ignorance and mistake the election officials in said Dundee precinct, on November 3, 1936, gave school board ballots containing the names of all candidates for members of the board of education of the school district of Omaha to approximately one hundred of the electors of said Dundee precinct who resided in that part of said Dundee precinct which is not within said school district of Omaha."

There is no evidence of a sinister purpose on the part of any one to perpetrate an election fraud. It is true, as found by the trial court, that at least 98 illegal votes were polled, but that alone, with the "ignorance and mistake" of election officers in furnishing and counting illegal ballots, did not make a case in favor of contestant. He was required, in addition, to prove by the best evidence obtainable the identity of the candidates for whom those illegal votes were cast. The statute and judicial precedents so contemplate. Comp. St. 1929, sec. 32-1030; *White v. Slama,* 89 Neb. 65, 130 N. W. 978; *Todd v. Cass County,* 30 Neb. 823, 47 N. W. 196. The election records did not disclose the identity of the candidates for whom the illegal ballots were cast. The secrecy of the ballot prevented that, but the door to other sources of information was open to contestant and the court. The election commissioner was

asked on the witness-stand to explain the method of conducting the election in Dundee precinct November 3, 1936, and answered:

"As the voter presents himself at the polling place, they ask him if he lives there and he must sign on Poll Book No. 1, give his name and address. After he has done that another clerk copies that name from this record on Poll Book No. 2. Poll Book No. 2 comes back to our office. Book No. 1 stays there and is sealed up and can only be opened up under a court order, as you have seen here, and these numbers are numerical right down the line as they come. As they come they are put right down in order in this book."

Poll Book No. 2 contained the names and addresses of the illegal voters as officially copied from the poll book wherein each voter, legal or illegal, in numerical order, wrote his own name and address. This was a public record of voters available to contestant before and pending the election contest. This public record, a map of the school district and reasonable diligence on the part of contestant could have been made a means of discovering the identity of the illegal voters. No effort was made to bring any of them into court to testify for whom they voted for members of the school board or whether school district ballots generally were returned unmarked to the judges of election. Litigants and courts are not helpless when such information is essential to the administration of justice.

The failure to identify the candidates for whom the illegal votes were cast under the circumstances disclosed was a fatal defect in contestant's case. The only judgment which could properly have been pronounced under the evidence was a dismissal of the election contest. This conclusion makes the discussion of other questions unnecessary. The judgment of the district court is reversed. A judgment of dismissal will be entered on appeal at the costs of plaintiff and the cause remanded for enforcement thereof pursuant to statute. Comp. St. 1929, sec. 20-1926.

REVERSED AND DISMISSED.