STATE OF NEBRASKA EX REL. JOHN R. BROGAN, APPELLANT,
v. HAROLD F. BOEHNER, APPELLEE.

119 N. W. 2d 147

Filed January 25, 1963. No. 35314.

Ginsburg, Rosenberg & Ginsburg and Norman Krivosha, for appellant.

Waring & Gewacke, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BOSLAUGH, J.

This is an action in quo warranto brought by John R. Brogan as relator against Harold F. Boehner as respondent. Both the relator and the respondent were candidates at the 1960 general election for the office of district director of Consumers Public Power District, District No. 5. The canvassing board declared the respondent elected. The relator then brought this action to oust the respondent from the office and to declare the relator to be entitled to the office. The trial court found generally for the respondent and dismissed the action. The relator's motion for new trial was overruled and he has appealed.

By various pleadings filed in the trial court the respondent questioned the right of the relator to maintain the action without filing a surety bond as provided in section 25-21,122, R. R. S. 1943. This section, which was a part of the original Code of Civil Procedure, was amended in 1921 to provide that where the action is instituted by a person other than the county attorney, a bond shall be filed with the information.

The relator contends that the action is brought under section 25-21,146, R. R. S. 1943. This section was originally enacted as a part of a separate statute by the Territorial Legislature in 1858. Laws 1858, p. 232.

The distinction between the two sections was recognized in Thompson v. James, 125 Neb. 350, 250 N. W. 237. In that case this court said: "By section 20-21,137, Comp. St. 1929, a citizen of the state claiming an office

that is usurped or invaded by another may maintain this form of action in a district court with or without the consent of the prosecuting attorney, upon his own relation. * * * Relators are given capacity to maintain this action by the above cited section of the statute upon their own relation, and are not required to comply with section 20-21,113, Comp. St. 1929, which provides for such an action by an elector, upon refusal of the prosecuting officer to bring the action and upon the giving of bond for costs, attorney's fee and prosecution without delay."

The relator in this case was authorized to bring the action upon his own relation and was not required to file a bond for costs, attorney's fee, and prosecution without delay.

The principal controversy concerns the validity of certain ballots cast by absentee or disabled voters and the effect to be given to invalid ballots. The ballots in question may be grouped into several categories, each of which will be discussed separately.

The first category consists of 11 ballots, cast by absentee voters, which were counted by the canvassing board and the trial court. The relator contends that these ballots should not have been counted because in each case the certificate of the official who administered the oath to the voter fails to state where the oath and certificate was executed. The statute provides that the certificate shall state "* * * the date of the execution of the oath and certificate and the place of such execution, if the voter is not in the military or naval service of the United States * * *." § 32-810, R. R. S. 1943. None of the voters were in the military or naval service of the United States.

The form of the oath and certificate is printed in blank upon the reverse side of the identification envelopes in which the ballots were returned to the county clerk. Above the oath is printed: "State of _____, County of _____." In each case these blanks

were filled in to indicate that the oath was executed in a county in Nebraska. However, the postmark on 10 of the envelopes shows that they were mailed from outside of the State of Nebraska.

Each of the certificates was executed by a commissioned officer in the armed forces of the United States. Section 32-813, R. R. S. 1943, authorizes any commissioned officer in the armed forces of the United States to administer oaths, make certificates, and perform such other acts as are necessary to enable a voter to exercise his absent voting privilege. The trial court held that there had been a substantial compliance with the statute, and that any failure of the certificates to state the place of execution was not a material defect because there was no territorial restriction upon the authority of the officers who executed the certificates. We arrive at the same conclusion and hold that the 11 ballots were properly counted.

The second category consists of 8 ballots, cast by sick and disabled voters of York County, Nebraska, which were not counted by the canvassing board and the trial court. The relator contends that these ballots should have been counted.

The parties stipulated that these ballots were rejected by the canvassing board because the venue shown on each of the identification envelopes was "State of York, County of York" and in each instance they were notarized in York County, Nebraska. The trial court found that these ballots should not be counted for the same reason.

The certificate on one of the identification envelopes is not dated, and there is no other evidence showing when the ballot contained therein was voted. We find that this ballot should not be counted.

As to the remaining 7 ballots, the evidence shows a compliance with the statute in all respects except that the venue is shown to be "State of York." The re-

spondent concedes in his brief that there is no State of York and we take judicial notice of that fact.

So far as these ballots are concerned, the situation is the same as if the venue had been left blank so that the venue would have read: "State of _____." Where no venue is shown, there is a presumption that the officer acted within his jurisdiction. Merriam v. Coffee, 16 Neb. 450, 20 N. W. 389; Crowell v. Johnson, 2 Neb. 146.

The respondent relies upon Miller v. Mersch, 152 Neb. 746, 42 N. W. 2d 652, and McMaster v. Wilkinson, 145 Neb. 39, 15 N. W. 2d 348, 155 A. L. R. 667. In Miller v. Mersch, *supra*, the venue was shown to be Thayer County, Nebraska, but the jurat indicated the oath had been administered in the Province of Saskatschewan, Canada, and no seal was affixed. In McMaster v. Wilkinson, *supra*, the venue was shown to be Adams County, Nebraska, and Saunders County, Nebraska, but the seal of the notary public indicated that he was a notary public of Sarpy County, Nebraska. In each of these cases the record on its face indicated that the authority of the officer administering the oath and executing the certificate did not extend to the county where the oath was administered and the certificate executed.

The evidence here is that the oaths were administered and the certificates executed by an officer who was duly authorized to act. The certificates on the identification envelopes for these ballots were executed by C. T. Moline. The evidence, including the seal affixed to the certificates, shows that C. T. Moline was a notary public of York County, Nebraska, at the times the certificates were executed. The evidence supports a finding that these ballots were voted, the oath taken, and the certificates executed in York County, Nebraska. We find that these 7 ballots should have been counted.

The third category consists of 7 ballots, cast by absentee voters, which were counted by the canvassing board and the trial court. The relator contends that

these ballots should not have been counted because it does not appear that the oaths were administered and the certificates executed by a duly authorized officer.

Section 32-813, R. R. S. 1943, provides that the oath of an absentee, sick, or disabled voter may be subscribed and sworn to before any commissioned officer, noncommissioned officer not below the rank of sergeant, or petty officer, in the armed forces of the United States, and that any such official may make the certificate and do and perform such other acts as are necessary to enable a voter to exercise his absent, sick, or disabled voting privilege.

The certificate on the identification envelope for one of the ballots shows that it was executed by an "Executive Officer, USWB." This description does not identify the officer as one of those authorized by section 32-813, R. R. S. 1943, and this ballot should not have been counted.

The certificate on the identification envelope for one of these ballots was executed by "Lt/Col Sara C. Hall, Chief of Nursing Service." The voter is identified by the oath as being a member of the Nursing Corps, United States Air Force. Although the identification of the officer executing the certificate is not as complete as it should have been, there was a substantial compliance with the statute, and we find that this ballot should have been counted.

The officers who executed the certificates on the identification envelopes for the other 5 ballots were identified as follows: "1/Lt. USMC"; "Captain, Inf."; "Captain United States Air Force"; "Lieutenant, USNR"; and "1/Lt USAF." This was a substantial compliance with the statute and these ballots should have been counted.

When the 7 ballots, cast by sick and disabled voters of York County, Nebraska, are counted and added to the number of votes cast for each of the parties as declared by the canvassing board, the relator is found to

have received 7,833 votes and the respondent 7,835 votes.

In the district court the relator contended that 109 invalid ballots had been counted. The trial court found that 90 invalid ballots had been counted. On appeal, the relator has contended that 18 ballots held valid by the trial court were invalid and should not have been counted. Of the 18 ballots questioned on appeal, we find that 17 were valid. We therefore conclude that 91 invalid ballots were counted. The remaining question is how these ballots affect the result of the election.

The ballots cast by absentee and disabled voters are separated from their identification envelopes when they are counted by the canvassing boards. § 32-817, R. R. S. 1943. After the ballots have been removed from the identification envelopes and counted, there is no way to identify a ballot as having been contained in a particular identification envelope.

There is no evidence as to how the 91 invalid ballots were cast. There is no showing as to how many of these ballots were voted for each of the candidates. It is probable that some of the invalid ballots were not cast for either candidate.

The general rule is that a party who wishes to dispute an election upon the basis that illegal votes were cast has the burden of proving for which candidate the illegal votes were cast. It is a necessary incident to proving that the illegal ballots affected the result of the election. The requirement is statutory in election contests. § 32-1001, R. R. S. 1943. In Mehrens v. Election Canvassing Board, 134 Neb. 151, 278 N. W. 252, this court held: "In an election contest on the ground that, through 'ignorance and mistake' of election officers, enough illegal votes were cast in a voting precinct to change the result of the election, the burden is on contestant to prove the casting of the illegal votes and also the candidates for whom they were cast."

In a recent decision, Arends v. Whitten, 172 Neb. 297,

109 N. W. 2d 363, this court followed the rule of the Mehrens case and held that where no attempt was made to show how allegedly unqualified voters had actually voted, the appellant's contentions in regard to such illegal ballots would be disregarded.

The relator relies upon McMaster v. Wilkinson, *supra*, and contends that the invalid ballots should be deducted proportionately from the total votes received by the relator and the respondent. In the McMaster case this court held: "When illegal ballots have been cast, the loss due to such ballots should be so apportioned that each candidate shall have deducted a share of them, proportioned according to the whole number of votes received by him."

In the McMaster case, which was an election contest between two candidates for the office of city councilman in the city of Lincoln, Nebraska, the court found that 5 illegal absentee and disabled ballots had been counted. The court found in that case that the contestant had a plurality of 9 votes. The result of the election would not have been affected if the entire 5 votes had been deducted from the total vote of the contestant.

The relator contends that the formula set out in the McMaster case should be used in this case on a county-by-county basis. If that were done, the result would be that the relator would have a plurality of approximately 2 votes. However, if the invalid ballots are deducted on the basis of the "entire vote" or "whole number of votes" received by each candidate, the result is unchanged.

The authority cited in the opinion in the McMaster case is McCrary on Elections (4 Ed.), § 495, p. 364. The rule is stated there as follows: "In purging the polls of illegal votes, the general rule is that, unless it be shown for which candidate they were cast, they are to be deducted from the whole vote of the election division, and not from the candidate having the largest num-

ber. Of course, in the application of this rule such illegal votes would be deducted proportionately from both candidates, according to the entire vote returned for each."

In discussing the rule stated above, Judge McCrary further states in §§ 496, 497, pp. 365, 366: "This is probably the safest rule that can be adopted in a court of justice, where there is no power to order a new election, and where great injury would result from declaring the office vacant; but it is manifest that it may sometimes work a great hardship, inasmuch as the truth might be, if it could be shown, that all the illegal votes were on one side, while it is scarcely to be presumed that they would ever be divided between the candidates in exact proportion to their whole vote. * * * Let it be understood that we are here referring to a case where it is found to be impossible by the use of due diligence to show for whom the illegal votes were cast. If in any given case it be shown that the proof was within the reach of the party whose duty it was to produce it, and that he neglected to produce it, then he may well be held answerable for his own neglect; and because it was his duty to show for whom the illegal votes were cast, and because he might, by the use of reasonable diligence, have made this showing, it may very properly be said that he should himself suffer the loss occasioned by deducting them from his own vote."

In Paine on Elections, § 513, p. 433, the author states: "Where illegal votes have been cast the true rule is to purge the poll, by first proving for whom they were cast, and thus ascertain the real vote; but, if this cannot be done, then to exclude the poll altogether. This is safer than the rule which arbitrarily apportions the fraud among the parties."

The author further states on p. 434: "In the total absence of proof tending to show for whom illegal votes, sufficient in number to affect the result, were cast, the duty of the court would seem to be to choose,

as wisely as possible, between a disregard of the illegality and a rejection of the entire precinct vote. There ought to be no arbitrary presumption of law, either that all the illegal votes were cast by the political party in the majority, or that they were cast by different parties in proportion to their numbers. To take the illegal votes all from one candidate, or pro rata from several candidates, would be, not to decide, but to make a case for the parties." See, also, Hamilton v. Marshall, 41 Wyo. 157, 282 P. 1058, 66 A. L. R. 1154.

We do not believe that courts should adopt and apply arbitrary rules which will determine elections upon the basis of chance. This court will not substitute its judgment for that of the electorate as declared by the proper authorities unless the record shows clearly what the result of the election should be. The record in this case fails in that respect.

To the extent that McMaster v. Wilkinson, *supra,* conflicts with this opinion, it is overruled.

The judgment of the district court declaring the respondent elected and dismissing the action of the relator is affirmed.

AFFIRMED.

SIMMONS, C. J., not participating.