LYLE DILSAVER, APPELLANT, v. GLEN POLLARD, APPELLEE.
214 N. W. 2d 478

Filed January 31, 1974. No. 39125.

Robert D. Stowell and Herman Ginsburg, for appellant.

Joseph W. Divis, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

CLINTON, J.

This is an appeal from the judgment of the District Court for Loup County, Nebraska, in an election contest involving the office of county commissioner from Madison Square Precinct, Loup County. The District Court determined the issues in favor of the contestee. Contestant appeals. Hereafter we will usually refer to the appellant Dilsaver as the contestant and the appellee Pollard as the contestee.

At the election in question held on November 7, 1972, the canvassing board determined that each candidate received 71 votes. The result was then determined by lot and the contestee declared elected.

The contestant's petition alleged that the absentee ballot of one Dorothy Pollard was illegally cast. The contestee in his answer alleged that the Pollard ballot was a legal and proper ballot, but further alleged that the vote of one Frank M. Dilsaver should not have been counted because he was not a qualified voter at the time of the election and that the illegal vote had been cast for the contestant.

The specific findings of the District Court, insofar as relevant to this appeal, were that the Dorothy Pollard ballot was valid and that it had been cast for the contestee, and that the Frank M. Dilsaver ballot was invalid and that it had been cast for the contestant. The court therefore found that Lyle Dilsaver, the contestant, had received 70 votes and the contestee, Glen Pollard, had received 71, and that the latter had been elected. It is evident that if the contestant is to prevail on this appeal he can do so only if both determinations by the trial court were wrong. Other issues were involved

in the court below, but on this appeal only the above two are saved and argued.

Dorothy Pollard was a college student who was to be absent from the county on election day, Tuesday, November 7, 1972. On Saturday, November 4, 1972, at about 4 p.m., the county clerk, pursuant to an oral request of Dorothy which she had made some time earlier in the week, opened the office and furnished her with a ballot which she then cast. It is the contestant's position that the vote was illegal because it was cast contrary to section 32-803, R. S. Supp., 1972, which provides: "Any qualified voter of this state who will be absent from the county where such voter resides on the day of any election, and who does not appear in person, at least three clear days before the election, before the county clerk, as issuing officer, to obtain a ballot and vote it before leaving home may, not more than ninety days nor less than three clear days before such election, apply in writing to the county clerk of the county of such voter's residence, as issuing officer, and request that such officer forward an absent voter's ballot to such voter by mail. . . ."

This statute clearly appears to mean that if a voter is going to be absent from the county on the day of an election he should proceed in one of two ways: (1) He may apply in writing to the county clerk not more than 90 nor less than 3 clear days before the election and request that a ballot be furnished to him by mail, or (2) he may appear in person before the county clerk at least 3 clear days before the election to obtain a ballot and "vote it before leaving home."

The contestee, on the other hand, points to the provision of section 32-812, R. S. Supp., 1972, which provides: "All ballots of absent, sick, or disabled voters, in order to be counted, must be voted not later than midnight of the day preceding election day." He argues that this latter statute lays down the essential require-

ment, and that since the ballot was voted within the time required by section 32-812, R. S. Supp., 1972, the failure to comply with the 3 clear days provision does not affect the fairness of the election and should not be held to disqualify the vote. There is no inconsistency whatever between the requirements of section 32-803, R. S. Supp., 1972, and section 32-812, R. S. Supp., 1972, and both can be applied without conflict. The first deals with the means of obtaining the ballot and the second with the time within which it must be voted.

It is conceded that the term "three clear days" has a well, long-established meaning and is determined in this case by excluding both the day of the election and the day the ballot is requested. Rex v. Justices of Herefordshire, 3 Barn. & Ald. 581; In re Gregg's Estate, 213 Pa. 260, 62 A. 856; State v. Marvin, 12 Iowa 499; 7 Words & Phrases, Clear Days, p. 630. The county clerk was apparently aware of the manner in which "clear days" are determined, but acted in accordance with the provisions of section 32-803, R. R. S. 1943, Reissue of 1968, and was unaware that the "two clear days" requirement of that statute had been changed by the 1969 amendment.

If the violation of the "three clear days" requirement were to be held not to invalidate the Pollard ballot, then we must necessarily ask ourselves what other effect the provision is to have, if any at all. It might be suggested that it is for the benefit of the official charged with issuing the ballot and that its purpose is to require the absent voter to make his request early enough so that last minute congestion will be avoided and the issuing official will have time to meet the requests, but that if conditions permit and he chooses to do so he may issue the ballot even though less than the required time period remains before the election. This argument has a certain surface appeal until we examine the alternatives and the undesirable results which could

flow from such an interpretation. If it is discretionary with the issuing officer as to whether the time requirement is met, then whether a certain absent voter may cast his ballot or not is necessarily left to the unfettered discretion of the election official. This in turn could result in lack of uniform application of discretion as between the voters of different counties depending upon the differing attitude of the officials. It could in turn be an invitation to those interested in the outcome of an election to attempt influence of the alleged discretion of the issuing officer. All this adds up to an invitation to corrupt the election process. The alternative interpretation would be to say that the "three clear days" provision is meaningless. This would constitute a judicial amendment of the statute and this we will not do.

We determine that the Dorothy Pollard ballot was an illegal ballot and should not be counted. The fact that the Dorothy Pollard ballot was cast for the contestee is not challenged. This conclusion was reached because the evidence showed that only seven absent or disabled voters' ballots were cast in the precinct and that of these the contestant received one and the contestee six. One of these absentee voters, whose qualifications are not challenged, waived her privilege against disclosing her vote and testified that her ballot had been cast for the contestant. It therefore followed that the Dorothy Pollard ballot must have been cast for the contestee.

We now turn to the question of the vote of Frank M. Dilsaver. There is no significant dispute in the competent evidence insofar as it pertains to the qualifications of Frank M. Dilsaver. He was called as a witness by the contestee. He testified that his home is on a farm in Madison Square Precinct in Loup County; he considers that his place of residence and he has never had any thought or intention of changing his residence

to any other place; he is a registered voter in Loup County; the farm is owned by him but leased to his son, but he maintains a residence thereon and has lived there since 1923; he is a former county commissioner of Loup County and had served 6 years in that office; and he works for his son on the farm on occasion. In 1967 he married his second wife; she owns a farm in Custer County; since his remarriage he spends part of his time in Custer County and the rest of it on his Loup County farm; and the residence on his farm he maintains the year around, keeping it heated and keeping provisions and clothing there. Neither side of this controversy pursued the matter of determining how he divided his time between the two places. There was no competent direct evidence to contradict the witness' expressed intention that his Loup County farm was his residence.

The trial court in its determinations seemed to place great weight upon the fact that the voter's wife resided in Custer County on a farm owned by her and that a return of the subpoena issued to Dilsaver to testify in the District Court had been endorsed "unable to locate" in Loup County. In connection with this residential determination the court in a memorandum opinion cited section 32-475(6), R. R. S. 1943, and held that that particular provision of the statute was under the facts determinative of the matter.

It has long been held by this court that section 32-475, R. R. S. 1943, does not establish absolute criteria for determining voting residence or domicile. Berry v. Wilcox, 44 Neb. 82, 62 N. W. 249; White v. Slama, 89 Neb. 65, 130 N. W. 978. In the second cited case the court said: "Whether an individual asserting the right to vote has established a residence within the meaning of section 1, art. VII of the constitution, is a judicial question," citing Berry v. Wilcox, *supra*. In Berry v. Wilcox, *supra,* the court pointed out: "The

question is, what did the word 'reside' mean when the constitution was adopted, not what the legislature may say it shall mean." This court pointed out in that case that the statutory rules are to be considered insofar as they are declaratory of prior law. It then cited the time honored definition of residence or domicile as: " 'that place . . . in which his habitation is fixed, without any present intention of removing therefrom.' " A majority of the subsections of section 32-475, R. R. S. 1943, deal with the intention of the voter. A person may have two residences, but only one of them is his domicile. In re Estate of Meyers, 137 Neb. 60, 288 N. W. 35. To effect a change of domicile there must not only be a change of residence, but an intention to permanently abandon the former home. In re Estate of Meyers, *supra.* One spouse may have a domicile separate from the other. Wray v. Wray, 149 Neb. 376, 31 N. W. 2d 228; Fletcher v. Fletcher, 182 Neb. 549, 156 N. W. 2d 1; Schalk v. Schalk, 168 Neb. 229, 95 N. W. 2d 545.

In this case the contestee, as a possible defense to the loss of the Pollard or other votes, pleaded that Frank M. Dilsaver was not a qualified voter and that his vote had been cast for the contestant. The appellee was in this respect a contestant himself. He had the burden of proving (1) that Frank M. Dilsaver was not a qualified voter, and (2) that the alleged illegal vote had been cast for Dilsaver. White v. Slama, *supra;* Mosiman v. Weber, 107 Neb. 737, 187 N. W. 109; Mehrens v. Election Canvassing Board, 134 Neb. 151, 278 N. W. 252; Arends v. Whitten, 172 Neb. 297, 109 N. W. 2d 363; State ex rel. Brogan v. Boehner, 174 Neb. 689, 119 N. W. 2d 147; Plouzek v. Saline County Reorganization Committee, 181 Neb. 440, 149 N. W. 2d 919; 29 C. J. S., Elections, § 274, p. 739.

On appeal to this court in an election contest the cause is tried de novo. This rule appears to conform

to the uniform practice in this state under various election contest statutes, although this court has not always expressly stated in the opinion that it was hearing the case de novo. Griffith v. Bonawitz, 73 Neb. 622, 103 N. W. 327; Swan v. Bowker, 135 Neb. 405, 281 N. W. 891; Richmond v. Breithaupt, 110 Neb. 859, 195 N. W. 463. In considering the evidence de novo we conclude that the contestee has not carried his burden of proving that Frank M. Dilsaver was not a qualified voter in Loup County. The finding of the trial court in this respect was, we believe, clearly wrong. In so finding we disregard the previously mentioned recital in the return of the subpoena. Even if we concede arguendo that such evidence was competent and sufficient it cannot be considered for it is not included in the bill of exceptions in this case. The bill of exceptions is the only vehicle for bringing evidence before this court on appeal. If an item is not offered in evidence and preserved in the bill of exceptions it may not be considered here. Everts v. School Dist. No. 16, 175 Neb. 310, 121 N. W. 2d 487.

Had we determined that the Dilsaver ballot was illegal it would still have been the burden of the contestee to show how that vote was cast. The trial court made its determination in this respect based solely on the father and son kinship of the contestant and Frank M. Dilsaver. It is true that how a person voted may be proved by circumstantial evidence. White v. Slama, *supra.* However, we have been cited no case supporting the proposition that kinship alone without more is a sufficient circumstance upon which to found a conclusion as to the person for whom a vote was cast. We have grave doubts as to the validity of such conclusion, but the determination that we here make, that Frank M. Dilsaver was a qualified voter, makes it unnecessary to determine that question.

We find that the contestant was the duly elected

commissioner from Madison Square Precinct in Loup County. The judgment below is reversed and the cause remanded for further order of the trial court in accordance with the provisions of section 32-1001.22, R. R. S. 1943, and this opinion.

REVERSED AND REMANDED.

SMITH, J., not participating.