## THE STATE, EX REL. JAMES ROCHE, v. AUGUST M. BRUGGEMANN.

Where there is fraudulent voting at an election, a *prima facie* case must be made to show that it is at least probable that sufficient false votes were cast to change the result, before an information in the nature of *quo warranto* will be allowed to test the title of an incumbent to his office.

---

On rule to show cause why an information in the nature of a *quo warranto* should not issue against the defendant to inquire by what authority he holds and exercises the office of director at large of the board of chosen freeholders of the county of Hudson.

Argued at June Term, 1890, before Justices SCUDDER and REED.

For the relator, *John Griffin* and *W. M. Dougherty.*

For the incumbent, *Vredenburgh & Garretson.*

The opinion of the court was delivered by

SCUDDER, J. The affidavits taken upon this rule to show cause afford strong proof that in the general election held in the county of Hudson in November, 1889, there was fraud practiced by the use of illegal ballots, and by the votes of those who were not entitled to vote at such election. Changes also appear to have been made in the poll books by the fraudulent conduct of the officers having charge of the election and by others who participated in the frauds. These matters have been made the subject of a public investigation, under the authority of the senate of our state; and the admissions of counsel upon the argument before the court leave no doubt in our minds that the grossest frauds were practiced at this election.

There can be no question that this is a matter of the gravest consequence to the people of the state in securing the integrity of our elections, and that criminal remedies ·may be used for the punishment of offenders.

The case before us now is in the form of the peculiar remedy on information in nature of *quo warranto* to test the right of an incumbent to an office to which he appears to have been elected by the returns of the board of canvassers of the county under the statute relating to elections. In this form of action it is sufficient for the incumbent, in the first instance, to show that by the returns made he has been legally elected, by a majority of the votes cast, at such election. It then becomes the duty of the contestant to prove, by competent testimony, that for some reason sufficient in law to defeat the election, the incumbent is not legally entitled to his office.

As already appears, the specific cause for contesting the right of the incumbent is, that there were fraudulent ballots cast and illegal voters admitted at the polls in several precincts of the wards in Jersey City. This examination has not been

extended to all, but relates only to twenty-five precincts in a total of one hundred and twenty-nine in the whole county.

As to these others there is no proof of fraud being practiced, and nothing more than inferences drawn, from the frauds shown in those precincts where direct evidence has been offered. The total number of votes cast in the county for director at large of the board of chosen freeholders was forty-one thousand one hundred and seventy-five. Of these the incumbent, August M. Bruggemann, received twenty-two thousand seven hundred and ninety-one votes; the contestant, James Roche, eighteen thousand one hundred and seventy-two, and others two hundred and twelve votes; by which it appears that the incumbent had a plurality over the contestant of four thousand six hundred and nineteen votes, upon which he was declared duly elected.

The proofs that have been offered show satisfactorily, for the purposes of this application, that of these ballots cast for the incumbent, one thousand seven hundred and twenty-four were fraudulent and should be deducted from his majority, leaving it two thousand eight hundred and ninety-five. If these facts be all that can be shown, they do not establish the right of the relator to oust the incumbent from his office. To effect his removal it must appear that the fraud perpetrated was sufficient to change the result of the election. This is according to the terms used in our General Election law, providing for summary investigation, and must necessarily be so to make the writ effectual if it should be issued. It is not demanded that full proof shall be made, in the first instance, that the incumbent has intruded upon an office to which he has not been legally elected, but the contestant is required to make by his affidavits upon this rule a *prima facie* case for the use of the writ which shall cast upon the incumbent the labor and expense of showing that he is entitled to the office which he holds. The degree of proof required for the allowance of such a writ is well defined in the case of *Queen* v. *Cousins*, 8 *L. R., Q. B.* 216, where the court says: " The rule always acted upon is, that if the right person has been elected, or it

is not shown that anybody else has been kept out, nor the result of the election in any way affected, the court will not allow the writ to issue."

In *King* v. *Mashiter*, 6 *Ad. & E.* 153, it was said, that before the court could grant a rule like this one there ought to be a clear *prima facie* case.

*King* v. *Jefferson*, 5 *Barn. & A.* 855.

The case of *King* v. *Harwood*, 2 *East* 177, which was relied upon to show a contrary rule, states that it was admitted that the merits of the election, if any, were sufficiently brought in question by the affidavits, and that therefore it was thought that at least enough appeared to put the matter in the course of inquiry.

*Shortt on Informations* 155, says, the court has always refused to grant an information where the relator has not made out a sufficiently clear *prima facie* case.

It is evident from these authorities, and others that might be cited, that the court has adhered to the practice that a sound discretion must be exercised upon the particular circumstances of every case. *State* v. *Tolan*, 4 *Vroom* 195.

" It would be very grievous," said Lord Mansfield, in *Rex* v. *Wardroper*, 4 *Burr.* 1964, "if the information should go of course, and it would be a breach of trust in the court to grant it as of course." However, therefore, the court may disapprove the fraudulent practices shown in the election in this county, brought in question in this controversy, and desire to afford the fullest opportunity of inquiry to discover the fraud, in this proceeding to determine the right of office, where the contestant has had full opportunity to take all the affidavits that he desired upon this application, and has failed to show, even presumptively, that sufficient illegal votes were received to defeat the incumbent and elect the relator to office, it cannot be said that he has made a sufficiently *prima facie* case.

The facts relate to the one subject, of fraudulent voting, and are clearly ascertainable; if no more be shown, we must conclude that nothing more remains.

It is not a reasonable inference, if we were allowed to presume fraud, that because there were frauds in twenty-five precincts of the county there were in others, sufficient to change the result. The proofs should go further, and make it appear that the fraudulent voting was so general throughout the county as to make it at least probable that the result was not truly stated in the returns of the board of canvassers.

The rule to show cause should be discharged.