### HERMAN LEHLBACH, CONTESTANT, v. JOSEPH E. HAYNES, INCUMBENT.

1. In a petition presented to contest an election, under sections 100–115 of "An act to regulate elections," approved April 18th, 1876 (*Rev.,* *p.* 355), the particular circumstances of the case must be set forth in such manner as will enable the court to see that the case is within the statute, and will enable the incumbent properly to prepare for his defence.

2. It is not enough to show that illegal votes were received in number greater than the plurality returned for the incumbent; there must also be shown circumstances rendering probable, *prima facie,* a conclusion that these illegal votes were cast for the incumbent.

3. Irregularities on the part of election officers or others, which do not appear to have affected the voting, the counting or the returns, will not form a ground of contest.

4. Various allegations rejected as too vague.

On question certified from the Essex Circuit Court.

Argued at November Term, 1891, before Justices DIXON and REED.

For the contestant, *John A. Miller* and *Richard Wayne Parker.*

For the incumbent, *Frederic W. Stevens.*

The opinion of the court was delivered by

Dixon, J. On October 31st, 1891, Herman Lehlbach presented to the Circuit Court of Essex county a petition, under sections 100–115 of "An act to regulate. elections," approved April 18th, 1876 (*Rev., p.* 355), to contest the election of Joseph E. Haynes as mayor of the city of Newark, at the charter election held October 13th, 1891 ; and thereupon the Circuit Court referred to this court the question whether such petition should be dismissed, on the ground that it does not state a case within the statute.

The statute provides that the election of any person to a county, township or city office may be contested :

I. For malconduct, fraud or corruption on the part of the members of any board of election in any township, ward or district, or of any member of the board of county canvassers, sufficient to change the result.

\*        \*        \*        \*        \*        \*        \*        \*        \*

V. When illegal votes have been received, or legal votes rejected, at the polls sufficient to change the result.

VI. For any error in any board of canvassers in counting the votes or declaring the result of the election, if such error would change the result.

VII. For any other cause which shows that another was the person legally elected.

The statute requires the contestant to file a petition in writing, endorsed by at least fifteen qualified electors of the proper county or township, setting forth one or more of the causes above specified and the particular circumstances of the case duly verified by the oaths or affirmations of at least two of the petitioners ; and when the reception of illegal or the rejection of legal votes is alleged as a cause of contest, the names of the persons who so voted, or whose votes were rejected, with the township, ward or district where they voted or offered to vote, must be set forth in the petition, if known.

The petition now before us states the general grounds of contest almost in the words of the statute as above recited, and then proceeds to give what the petitioners deem the "par-

ticular circumstances of the case." It is with regard to the definiteness and sufficiency of these particulars that the counsel for the incumbent, Mr. Haynes, assails the legality of the petition.

There is no occasion for an attempt to paraphrase the expression "particular circumstances of the case;" it is itself clear. The object of requiring the circumstances to be stated in the petition was to enable the court to see that the case presented is within the statute, and to enable the incumbent properly to prepare for his defence. By keeping these purposes in view, the definiteness of each allegation and the sufficiency of them all may be reasonably tested.

The general conditions shown by the petition are, that in the city there were sixty-three election districts, wherein, according to the returns, the contestant received sixteen thousand eight hundred and forty-seven votes and the incumbent seventeen thousand and forty-three, giving the latter a plurality of one hundred and ninety-six.

To defeat this election, the petition alleges that in the whole city three hundred and forty-three votes placed in the ballot boxes were rejected by the election boards in the count, for causes unknown to the petitioners, who, nevertheless, charge that many of them, cast for Herman Lehlbach, were wrongfully rejected.

This allegation is too vague. There are several legal reasons for rejecting ballots cast, and the petition affords no ground for denying the legality of the conduct of the election officers. Even if the conjecture, that many cast for the contestant were wrongfully rejected, be taken as true, the petition should state in what districts such rejections occurred, and how many in each district, so that the incumbent might prepare for his defence and the court might see what influence the counting of these rejected ballots would have toward changing the result. It does not excuse the vagueness of this allegation to say that the petitioners have no more definite information, for if their information be of any value it must

indicate the districts in which the ballots wrongfully rejected were cast.

The petition also alleges that several hundred ballots, cast and counted for Joseph E. Haynes, were not in conformity with law. This allegation is open to objections similar to those affecting the preceding one.

There are also various statements like these: " The facts already discovered indicate that there was an organized and successful scheme of colonization and personation of voters in favor of the election of Joseph E. Haynes;" " in Second district of Fourth ward, large irregularities and illegal voting are charged;" " in Second district of Sixth ward, frauds are charged."

These, also, are too vague.

The petition also shows that in twenty-seven of the districts three hundred and fifty-three ballots were cast by persons who afterwards could not, on careful investigation, be discovered to have resided in the places from which they were registered. The names of these persons and the districts in which they voted are given. But there is nothing to indicate for whom they voted. Without this, the court cannot say that these illegal votes were "sufficient to change the result." Equally defective are the charges that in the Fourth district of the Twelfth ward votes were received for ten minutes after the hour fixed by law for closing the polls, so as to make up for ten minutes lost during the day while the box was put of order; that in the Sixth district of the Sixth ward a person who was not registered voted; that in the First district of the Seventh ward three or four individuals voted by falsely personating legal voters; that in the Fourth district of the Second ward six persons voted who were not registered; that in the Third district of the Fifteenth ward "about twenty or thirty" ballots were cast in unofficial envelopes; that in the Third district of the First ward two legal voters, and in the Second district of the Second ward one legal voter, were falsely personated.

The contestant urges that, without judicial process, it is impossible for him to obtain evidence as to the candidate for whom these illegal votes were cast, and, therefore, insists that the statute only requires him to show illegal votes in number sufficient to change the result, if all be deducted from the incumbent's tally. We do not, however, so read the act. It makes the reception of illegal votes a ground of contest only when they are sufficient to change the result—that is, not merely to show that the plurality declared for the incumbent is erroneous, but to show that another than he was the person legally elected. Unless the petition states circumstances which *prima facie* render this conclusion probable, it does not present a case within the law. *Roche* v. *Bruggemann*, 24 *Vroom* 122. There are other modes of proof besides the affidavit of the voter, and the obstacles in the way are not usually insuperable without compulsory process. But, at any rate, the difficulties spring from the terms of the statute, in accordance with which we must proceed in this statutory investigation. The presumption is with the incumbent, and we cannot assume, without evidence against that presumption, that the illegal ballots were for him rather than his opponents.

The petition contains one other charge of the reception of illegal votes, viz.: "That in the Third district of the Sixth ward many votes were cast, received and counted for Joseph E. Haynes in envelopes which were not official envelopes." The petition does not give the names of the persons who cast these illegal ballots, nor state that they are unknown, as the act expressly requires, nor is their number indicated, so as to show their effect upon the result.

For the foregoing reasons, all the charges thus far examined are deemed inadequate.

There remain some charges of irregularity, of which the most serious are that in the Fourth district of the Second ward and in the First district of the Fifth ward, a person acted as a member of the election board without being legally appointed and sworn, and that in several districts the poll books were not filed according to law. It does not appear

that these irregularities had any effect upon the voting, the counting or the returns, and consequently, for present purposes they are immaterial.

In my judgment, the petition fails to set forth with reasonable particularity circumstances sufficient to render probable any statutory ground of contest, and, therefore, the Circuit Court should be advised to dismiss the same.

In considering this matter, we have treated all the affidavits printed with the petition as forming part of it. Several of them, however, bear date after the presentation of the petition, and therefore, probably, should be disregarded. Without them, the allegations of the petitioners only become still more vague and unsatisfactory.