PASSAIC COUNTY CIRCUIT COURT.

WILLIAM BRUECKMANN ET AL. v. HORACE FRIGNOCA; AND IN THE MATTER OF APPLICATION OF JOSEPH MILLER ET AL., FOR THE CONTEST OF THE ELECTION OF HORACE FRIGNOCA FOR TAX COLLECTOR OF THE BOROUGH OF HALEDON, IN THE COUNTY OF PASSAIC.

For the petitioner, *Samuel Raff*.

For the respondent, *James J. Murner*.

MACKAY, J. This is a proceeding instituted by virtue of *Pamph. L.* 1930, *ch.* 187, entitled "An act to regulate elections, revision of 1930." Paragraph 355, section 1 of said act and the following paragraphs up to and including paragraph 368, section 14, are applicable to this case.

The petitioners seek to set aside the election of Horace Frignoca as collector of Haledon and charge fraud, &c. The principal contention was that located at Haledon, Passaic county, New Jersey, there is the Valley View Sanatorium, which is an institution for the cure of persons having tuberculosis and living in Passaic county; that on election day, November 4th, 1930, more than one hundred of the inmates voted illegally and that they voted for Frignoca, and if these votes were rejected Brueckmann would be the duly elected collector of the municipality. Only twenty-three of the inmates were sworn and after examination by the respective attorneys the court felt justified in asking the question of each inmate as to whom he voted for (paragraph 361, section 7). Of the twenty-three answers, five voted for Frignoca, one for Brueckmann, three did not vote for either one and fourteen did not know for whom they voted. In other words, they either didn't know or couldn't remember.

When adjournment was taken for the day counsel for petitioner was of the opinion that from the testimony of these witnesses it would not change a sufficient number of votes to declare Brueckmann elected and so the proceeding was practically abandoned, except that it was suggested an opinion should be rendered as to the legality of these votes, with which suggestion I agree.

All of the twenty-three witnesses were residents of Passaic county and had wives or families, and if single had homes with their parents where they could legally vote. They went to the Valley View Sanatorium because afflicted with tuberculosis and only for the purpose of being cured, and when cured expected to return to their homes. They had all lived one year in the state and five months in the county, and in my opinion had domiciles or voting residences to which they expected to return. They could not possibly remain in the institution after being cured so there was no possibility of making that institution the voting residence and domicile.

"The residence required in the laws of this state, to entitle a person to vote at an election, means his fixed domicile, or permanent home; and is not changed or altered by his occasional absence, with or without his family, if it be *animo revertendi*. A residence in law, once obtained, continues without intermission until a new one is gained." *Cadwalader* v. *Howell,* 18 *N. J. L.* 138.

"Persons who are in hospitals for the purpose of obtaining medical treatment do not thereby obtain a residence in such hospital so as to entitle them to be registered as living or residing therein. The purpose is a temporary one, and no residence can thereby be acquired." 10 *Am. & Eng. Encycl. L.* 601.

"A person does not forfeit his residence in a precinct in which he was a voter merely by becoming a county charge and an inmate of the poorhouse." *Dale* v. *Irwin,* 78 *Ill.* 170.

"A pauper remaining in the county poorhouse and sent there from another township, does not acquire a residence in the township in which the poorhouse is located so as to entitle him to vote in the latter township." *Clark* v. *Robinson,* 88 *Ill.* 498.

"In general, it may be said·that an intent·to change one's domicile and place of abode is not so readily presumed from a residence at a public institution for the purpose of education, for a given length of time, as it would be from a like removal from one town to another, and residing there for the ordinary purposes of life; and therefore stronger facts and circumstances must concur to establish the proof of change of domicile in the one case than in the other. But where the proofs of change of domicile, drawn from the various sources already indicated, are such as to overcome the presumption of the continuance of prior domicile, such preponderance of proof, concurring with an actual residence of the student in the town where the public institution is situated, will be sufficient to establish his domicile and give him a right to vote in that town with other municipal rights and privileges." Opinion of Justices, 5 *Metc.* (*Mass.*) 590.

It appears from the foregoing case that while the student could obtain a voting residence or domicile in the town where the public institution for learning was located, the proof would have to be such as to convince one that it was so intended, and in this case if it had appeared that the student was living at the institution or in a home connected with the institution, he would not have been permitted to vote, but having acquired a separate residence outside of and beyond the control and authority of the institution he had evidenced his intention to permanently remain in that particular town.

*In the Matter of Goodman,* 146 *N. Y.* 284, Judge Finch said:

"We do not mean to say that a voter may not change his legal residence into a new district in spite of the fact that he becomes a student in an institution of learning therein, but the facts to establish such a change must be wholly independent and outside of his presence in the new district as a student, and should be very clear and convincing to overcome the natural presumption. In the present case there were no such facts. Presumably rooms in the seminary rented to students are to be occupied only during the prescribed period of study, and not permanently as a residence, and there was

nothing before the court to show any change of residence beyond the temporary presence in the institution for such period of study. This construction obeys literally the constitutional mandate, and does not necessarily disfranchise a single citizen. It merely recognizes and applies the admitted truth, acted upon at every election, that the voting residence may be in one place and the actual abode in another. Usually, perhaps always, the voting residence remains unchanged until a new residence is actually acquired, but there can be no such acquisition merely by an abode as a student in an institution of learning. Something else, beyond that fact and wholly independent of it, must occur to effect the change. The intention to change is not alone sufficient. It must exist, but must concur with and be manifested by resultant acts which are independent of the presence as a student in the new locality. It is only in quite exceptional cases that such a result could be reached, and nothing in the one before us takes the situation out of the constitutional rule." Cited and approved *In re Matter of Garvey*, 147 *N. Y.* 117.

I have cited cases relating to students in colleges because they are numerous and apparently in line with the situation now before me in this case. Only one or two cases of persons in sanatoriums could be found. The reason for this may be that courts and lawyers would be inclined to the opinion that confinement in an institution of this kind for treatment is of temporary nature and the *animus manendi* which is necessary for a voting residence is not present.

Mr. Justice Donges in the case of *Snyder* v. *Callahan, 3 N. J. Mis. R.* 269, very aptly said:

"In Watkinson *v.* Watkinson, the Court of Errors and Appeals, speaking by Judge Vroom, in treating of the question, of domicile as a basis for jurisdiction under our Divorce act, quotes with approval the language of Mr. Justice Depue in Harrell *v.* Harrell, that 'to the *factum* of residence must be added the *animus manendi*, and that place is the domicile of a person in which he has voluntarily fixed his habitation, not for a mere temporary or special purpose, but

with a present intention of making it his home, unless or until something which is uncertain or unexpected shall happen to induce him to adopt some other permanent home,' and, continuing, the court says: 'The doctrine laid down by the courts of the United States is that a domicile having been once acquired continues until a new one is actually acquired *animo et facto.*' 10 *Am. & Eng. Encycl. L.* 605. And while, in determining the *animus manendi,* the declarations of the claimant are material and important, yet, as was said by Vice-Chancellor Van Fleet in Firth *v.* Firth, 'the best and most trustworthy evidence of it is to be found as a general rule in his acts rather than in his declarations.'

"The general rule in respect to the acquisition of a new domicile is, that after a person has abandoned his domicile of origin, or his acquired domicile, his domicile will be considered to be in that place in which he has voluntarily fixed his habitation, not for a special or temporary purpose, but with a present intention of making it his home, unless, or until, something which is uncertain or unexpected should happen to induce him to adopt some other permanent home." *Snyder* v. *Callahan,* 3 *N. J. Mis. R.* 269.

Therefore, I find as a fact from the evidence before me in this case, that the inmates of Valley View Sanatorium were not legally registered voters of the borough of Haledon and not entitled to vote at the general election held November 4th, 1930. Nevertheless, in view of the fact that there is no evidence to show that a sufficient number of the inmates voted for Horace Frignoca for the office of collector so as to change the result, the judgment of the court is that Horace Frignoca was duly elected collector of the borough of Haledon.

I will sign the proper statutory order to this effect when presented by counsel.