CHARLES A. BURKETT, PETITIONER-APPELLEE, v. VENTORINO FRANCESCONI AND STANLEY CIECHANOWSKI, RESPONDENTS-APPELLANTS.

GEORGE FARRELL, Jr., PETITIONER-APPELLEE, v. VENTORINO FRANCESCONI AND STANLEY CIECHANOWSKI, RESPONDENTS-APPELLANTS.

Argued October 8, 1941—Decided January 21, 1942.

542

Before BROGAN, CHIEF JUSTICE, and Justices CASE and HEHER.

For the petitioners-appellees, *Benjamin F. Friedman.*

For the respondents-appellants, *Alexander Feinberg* and *James M. Davis, Jr.*

BROGAN, CHIEF JUSTICE. This is an appeal from a judgment of the Camden County Circuit Court in a contested election case. Messrs. Burkett, Farrell and Westcott were candidates of the Republican party at the general election in November, 1940, for the office of member of the Board of Chosen Freeholders of Camden County. They were opposed by Messrs. Ciechanowski, Francesconi and Molt, candidates of the Democratic party. The latter group was declared elected and certificates of election were issued by the County Board of Canvassers. The result of the election was challenged by the unsuccessful candidates, invoking the provisions of our Election Law, 19:29-1, *et seq.* The first section of the statute invoked provides for such contest on several grounds among which are (a) Malconduct, fraud or corruption on the part of the members of any district board, or of any members of the Board of County Canvassers sufficient to challenge the result; * * * (e) When illegal votes have been received, or legal votes rejected at the polls sufficient to change the result.

No evidence was offered that the provisions of subdivision "e" were violated, and the other grounds for contest set forth in the several subdivisions of the statute (19:29-1) were not relied upon by the contestants. The fraud or misconduct charged and proved was: (1) that a number of ballots in

four districts (sixth, eighth, ninth districts, seventh ward, and fifth district, fourth ward) of the City of Camden were marked in favor of the appellants by someone other than the voter, the claim being that the voter had made no choice; (2) the changing of the marking on ballots voted for the contestants and substituting for the voter's choice a marking for the appellants; (3) the alteration of ballots in these districts wherein the changes did not affect the office in question or the candidates for this office, and (4) the alteration, by someone other than the voter, of marking on ballots affecting questions submitted to the electorate, viz., whether the salaries of the police and fire departments should be increased and whether liquor should be sold on Sunday. In this class of tampering, ballots that had been voted by the voter in the "No" column were changed and corresponding marks supplied for the "Yes" column. There were instances where the voter failed to express any preference on these questions and some other person had supplied marks for the "Yes" column.

The contest was heard by Circuit Court Judge Palmer who found that the fraud in the districts mentioned was sufficient to challenge the result in those districts and his judgment was that the entire vote in those districts be rejected, that is, not tabulated or counted for either side. The rejection of the total vote in these districts resulted in the displacement of the two appellants, Francesconi and Ciechanowski, and the election of Burkett and Farrell. Thereupon a judgment was entered annulling the certificates of election previously issued to the two appellants and the issuance of a certificate of election to the two contestants.

Many grounds of appeal are stated and they will be dealt with in the order in which they are argued. It is first said that these proceedings are strictly statutory and that the statute must be rigidly followed. This point may be conceded. (*Clee v. Moore,* 119 *N. J. L.* 215, 216, and cases cited therein.) Then it is argued that the word "challenge" mentioned in the statute above quoted, subdivision "a," means "to call in question, dispute or doubtful." This, too, may be conceded. (*In re Clee,* 119 *N. J. L.* 310, 316, and authorities cited therein.) It is further argued that where the result of the

fraudulent conduct of the Board may be ascertained and its effect exscinded, and the true will of the electorate determined, this should be done: that elections should not be set aside unless clearly illegal. This, too, is an accurate statement of our law. (*In re Clee, supra,* and cases cited.)

It is next insisted that a petition to set aside an election should be dismissed unless fraud was shown which challenged the returns to such an extent that the fraud could not be purged and the true vote determined. This argument rests on premises that do not comprehend the whole situation. The fraud in this case was such as to impair confidence in the integrity of the contents of the boxes. Proof of fraud under our law requires that the ballot be invalidated and where fraud has been perpetrated in an election district by the officers of election, or permitted by them to such an extent and character that the correct and genuine result cannot be determined with reasonable certainty, the entire result from that district should be rejected. The election returns from such districts, under such circumstances, have no value.

The learned trial judge found in this case that the fraud was extensive enough to challenge the result, that is, he found it was not possible to segregate the ballots that should be given legal efficacy from those that had been tampered with and which consequently could not be given any effect, in which circumstances he was justified in rejecting the vote in such district or districts, *in toto,* as was done. The court's finding in this particular, there being plenary evidence in support thereof, is binding upon this court and may not be questioned on appeal. *Somers* v. *Steelman,* 77 *N. J. L.* 119; *R. S.* 19:29-11.

We now take up the main point urged by the appellants, which is argued in detail: that the Circuit Court Judge was not justified in rejecting the whole vote in these four districts under the evidence. The argument rests on two points (1) that the evidence in the case was such that the true will of the voters could readily be determined by rejecting the ballots which had been changed and otherwise tampered with, and that the counting of the balance of the ballots in these districts, marked for the appellants, would result in their elec-

tion, and (2) that the ballots that were tampered with in other departments, e. g., the referenda questions and where the markings were changed with regard to some other office on the ticket, should have been counted in this contest. As to this, we repeat that there is no merit in the contention. The fraud in these four districts is neither challenged, disputed nor questioned by the appellants. Indeed it is admitted. This is its extent: In the eighth and ninth districts of the seventh ward, the ballots inspected by the court, and discussed in the testimony of a handwriting expert, were 864 in number. At least 816 were tampered with and changed by someone other than the voter, the changes affecting the voting on the public questions, the voting for the office in question, and the voting on other offices.

The argument of the appellants is that the court should not reject the votes that were not tampered with and, further, that if the ballots affected by fraud in the freeholder column alone were omitted and all others counted the appellants were entitled to retain their office. This argument begs the question. The court found from the evidence in the case that the fraud was so diffused as to challenge the result. Not all the changed ballots had been identified and segregated but, to the contrary, the condition was such that it was impossible even for the expert, Mr. Melcher, to say what ballots had not been changed. At one point this witness testified that he could not say the mark at the "head of the column," that is, the vote for the Presidential electors, was the same as the mark made opposite the names of these several candidates. This testimony was neither contradicted nor challenged at the trial, nor is it challenged here. The proposition that the changed ballots had been segregated and isolated is a hypothesis that is completely erroneous, and it is on this hypothesis that the argument of the appellants rests. The trial court did not accept this argument, assuming it was made below, nor can we. The record was such that no one could say with any assurance not what ballots were invalid but which were valid. This state of the proof challenges the result and is justification, under the statute, for rejecting the vote in such districts.

The conclusion that the entire vote in these districts should be rejected was a fact determination of the trial court. The evidence supported it. This finding did not affect the incumbent, Molt, but resulted in the defeat of Ciechanowski and Francesconi and the election of Burkett and Farrell.

The next point of the appellants is that the Circuit Court erred in declaring Burkett and Farrell elected. Their argument is that the issue being whether Ciechanowski and Francesconi had in fact been elected, the court could "only set aside the election." Reliance is placed upon the cases of *In re Hunt,* 15 *N. J. Mis. R.* 331, and *In re Stoebling,* 16 *Id.* 34. See, also, *Ziegener* v. *Bach,* 120 *N. J. L.* 42. We do not think this point merits much discussion. In the first two cases referred to the fraud was general. In the Hunt case the facts supported the finding that there was no valid election of either candidate. The court held that the election was "so contaminated by fraud and malconduct * * * as to render its result truly doubtful * * *." The court being unable to determine the number of legal votes respectively received, the election was set aside. In the Stoebling case, too, the court found that the fraud was general throughout the county. There, after recount, it was testified that one incumbent had a majority of 93 votes, the other incumbent a majority of 51, but the court found that votes "in a number far greater than the majorities * * * were illegally cast;" the number of such votes could not be ascertained; in a word, the result of the election was so doubtful that a certificate of election could not be issued to the incumbents or the contestants. The instant case, however, is much different. The parties here were voted for throughout the entire county and the vote in four districts only in the City of Camden was successfully challenged. To void a countywide election because of the existence of fraud in four election districts is an absurdity. Our Election Law never had any such prospect in view. The Election Law looks to the election district as the geographical political unit. If "malconduct, fraud or corruption on the part of the members" of one or several units is such that it is "sufficient to challenge the result," as was the case here, it is our judgment that the vote in such dis-

tricts may be rejected, as was done in this case, and the election determined on the vote in the balance of the districts. This follows the mandate of the statute (*R. S.* 19:29-8), and the court acting thereunder gave judgment accordingly. No error is perceived in the judgment under review. The judgment should be affirmed, with costs.