MIDDLESEX COUNTY CIRCUIT COURT.

FREDERICK F. RICHARDSON, CONTESTANT, v. THOMAS
G. RADICS, INCUMBENT.

Decided November 9, 1943.

For the contestant, *Frederick F. Richardson* and *Walter C. Sedam.*

For the incumbent, *Paul W. Ewing.*

OLIPHANT, C. C. J.   On May 11th, 1943, a municipal election was held in the City of New Brunswick for the selection of five city commissioners. The incumbent Radics received 4,393 votes and the contestant Richardson 4,384, a majority of nine for the incumbent. The contestant filed a petition to contest said election under *R. S.* 19:29–1, *et seq.; N. J. S. A.* 19:29–1, *et seq.*

Several amendments to the petition were allowed by the court, one of which challenges the legality of the soldier vote received and counted in said election.

As the decision on this question might be dispositive of the matter it was agreed by counsel that it should be determined before taking testimony on the other questions involved and the following stipulation was entered into relative to the counting of votes received from those in military service:

"It is stipulated between the respective parties in open court that the Act respecting absentee voting of men in the military service was in all respects complied with by the Adjutant-General and by the County Clerk.

"It is further stipulated that 244 ballots were returned by men in the military service to the County Board of Elections; that upon examination of the envelopes the County Board of Elections determined that three of the ballots were from men who did not reside in the City of New Brunswick. These three ballots were rejected. The County Board then proceeded to count, and did count, the remaining 241 ballots. This count showed that 113 ballots were voted for the incumbent Radics and 83 ballots were voted for the contestant Richardson.

"Upon receipt of the ballots, the County Election Board checked the names and addresses shown on the outside of the envelopes with the list certified by the Adjutant-General, and ascertained that 241 of the ballots received by them were shown upon the Adjutant-General's list, and that three of the ballots showed that the soldiers were not resident of the City of New Brunswick. The County Board of Elections then proceeded to count and did count all of the 241 votes, with the result stated above.

"Before proceeding with the opening of the 241 ballots received as aforesaid, the County Board did check the names and addresses appearing on the 241 ballots with the permanent registry list on file in its office, and ascertained that of said 241, 63 were not registered, and the remaining number, namely, 178 were registered.

"The Board counted all of the soldier vote pursuant to opinions given by the Honorable Adrian Lyon, Judge of the Middlesex County Common Pleas Court, to the Board by letters dated October 28th, 1941, and September 14th, 1942, copies of which letters are to be made part of this record.

"It is further stipulated between the parties that there is no factual dispute, the matter here submitted is one of law for the court."

Article 2, paragraph 1, of the Constitution of this state, *N. J. S. A.*, provides as follows: "Every citizen of the United States, of the age of 21 years, who shall have been a resident of this State one year, and of the County in which he claims his vote for five months next before the election comes, shall be entitled to vote for all officers that now are, or hereafter may be elective by the people ` * * and provided further that in time of war no *elector* in the actual military services of the State, or of the United States, in the army or navy thereof, shall be deprived of his vote, by reason of his absence from such election district; and the legislature shall have power to provide the manner in which, and the time and place at which, such absent electors may vote, and for the return and canvass of their votes in the election district, in which they respectively reside."

The provision is that "no elector in actual military service"

shall be deprived of his vote and the first inquiry therefore, is what is an elector? Bouvier says an elector is "one that has a right to vote;" Webster defines it as "a person entitled to vote in favor of a candidate for office." One entitled to vote is a duly qualified voter and what the constitution protects is the right of that duly qualified voter to cast his ballot even though he may be in the military service and absent from his election district. It has long been settled law that the legislature has the right and duty to determine who are legal qualified voters or electors. In *Ransom* v. *Black*, 54 *N. J. L.* 446 (at *p.* 461); 24 *Atl. Rep.* 489, 1021, Mr. Justice Dixon said: "It must be conceded that legislation is necessary to determine who are legal voters, to provide for them the means of voting, to prevent all others from voting and to ascertain the result of the vote. All legislation conducive to these ends is, therefore, permissible." To the same effect is the opinion of Mr. Justice Reid in the same case.

In *State* v. *Wrightson*, 56 *N. J. L.* 126; 28 *Atl. Rep.* 56, and *McArdle* v. *Jersey City*, 66 *N. J. L.* 590; 49 *Atl. Rep.* 1013, it was held that the constitution guaranteed the right of suffrage to *every qualified* voter. The Supreme Court, *In re Freeholders of Hudson County*, 105 *N. J. L.* 57; 143 *Atl. Rep.* 536, said: "It is quite clear from the decisions of the courts of this state, that although an individual falls within the class of those entitled to vote by virtue of the constitutional declaration, nevertheless, the manner in which and how he shall become entitled to exercise the right extended to him or her is left to the sound discretion and wisdom of the law making power of this state." In that same case the court defines a qualified voter and says after setting out the constitutional qualifications, "And in addition to this constitutional qualification, he or she must be registered in the election district where his or her place of residence is, &c." In failing to comply with the requirements alluded to, no right to vote has been acquired. The court in *Public Service* v. *Camden*, 13 *N. J. Mis. R.* 693; 180 *Atl. Rep.* 778, 779, again defined a legal voter as "one possessed of the constitutional requirements and also duly registered."

Judge Van Riper in the Essex County Court of Common

Pleas lately ruled on the point involved here and said. "It is my conclusion that where the state act refers to the right of a person to vote who is a legally qualified voter it means a person who has complied with all the requirements of the election law necessary to vote, including registration, in so far as it refers to state or county or municipal offices, but not federal office."

It would seem to be established, therefore, that an elector is a qualified or legal voter and that a qualified or legal voter is one that has duly registered in compliance with the statutory requirements.

The Commission Government Act under which the City of New Brunswick operates itself defines in *R. S.* 40:70-2; *N. J. S. A.* 40:70-2, "Electors" as "citizens of the municipality as were registered as voters at the last general election." It further provided that the official registry list "shall be the official signature copy register or official registry list, as the case may be, containing the names of those persons qualified to vote at the last preceding general election. *R. S.* 40:75-12; *N. J. S. A.* 40:75-12.

The legislature having the right and power to determine who are entitled to vote under the constitutional mandate has conferred that right upon those in the military forces who are legally qualified voters. *R. S.* 19:54-25; *N. J. S. A.* 19:54-25. Specific attention should be called to paragraphs 27, 28 and 33 of that act, *N. J. S. A.* 19:54-27, 19:54-28, 19:54-33. All of them refer only to "qualified electors."

It is important to note that in paragraph 35 of that act, *N. J. S. A.* 19:54-35, the legislature directs that it is the duty of the County Board of Elections to determine whether the ballot of one in the military service is that of a legally qualified voter which we have heretofore seen is one duly registered.

Under the stipulation it is admitted that 63 of the 244 ballots returned by men in the military services were from persons not registered. Three ballots were from non-residents of the City of New Brunswick. With the exception of the latter, they were nevertheless all counted and the votes of

those who were not registered were not segregated but mixed with those ballots from registered voters so that it is now impossible to separate them. If they had not been co-mingled it would have been possible to invalidate the votes of those not registered and determined for whom they were voted.

The counting of the 63 palpably illegal votes and the confounding of them with the 178 apparently valid ones taints the whole soldier vote with illegality. It is impossible to segregate the legal votes from those which were illegal. The number of these illegal votes were in number sufficient to change the result.

The whole soldier vote must be rejected on account of the co-mingling and mixing of the legal and illegal votes above referred to.

This is the reasoning of the Supreme Court in *Burkett* v. *Francesconi,* 127 *N. J. L.* 541; 23 *Atl. Rep.* (2d) 780. The effect of that decision is that where illegal votes cannot be separated from legal ones the rejection of the whole unit is necessary. The case of *Sterner* v. *Donahay,* 21 *N. J. Mis. R.* 360, is directly in point. There Judge Kinkead rejected the soldier vote *in toto* for the failure of the County Board of Elections to determine as required by *R. S.* 19:54–35; *N. J. S. A.* 19:54–35, whether those ballots were from registered voters. That case was not as persuasive as the instant one, where though the examination was made and some ballots were found to be from unregistered persons, they were nevertheless counted. The incumbent cites the case of *Lehlbach* v. *Haynes,* 54 *N. J. L.* 77; 23 *Atl. Rep.* 422, in support of his contention. The court there was dealing with the sufficiency of a pleading and the decision is not authority for the proposition that before ballots can be rejected it must be shown for whom they were voted and in that manner determine if the result would be changed. Such a rule would be an absurdity in a case such as presented here where it is an impossibility to determine for whom the illegal votes were marked. While that case dealt with fraud on the part of the members of an election board, the same rule would apply in a case such as the instant one. What was there said by Chief Justice Brogan is very applicable to the present

state of facts. The court said "The learned trial judge found that the fraud was extensive enough to challenge the result, that is, he found it was not possible to segregate the ballots that should be given legal efficacy from those which had been tampered with and which consequently could not be given any effect, in which circumstances he was justified in rejecting the vote in such district or districts *in toto*."

The rejection of the votes of those in military service as a unit leaves the result as 4,300 for the contestant Richardson and 4,281 for the incumbent Radics or a majority of 19 for the contestant.

Counsel for the incumbent maintains that contestant having asked for a recount under *R. S.* 19:28–1; *N. J. S. A.* 19:28–1, is bound thereby and estopped from availing himself of the present proceeding. A candidate can avail himself of both statutory remedies, one, a recount under *R. S.* 19:28–1; *N. J. S. A.* 19:28–1, the other for fraud or the receipt of illegal votes under *R. S.* 19:29–1; *N. J. S. A.* 19:29–1. Each is a distinct and separate proceeding for the remedy of separate and distinct wrongs. The fact that a judge of the Court of Common Pleas of Middlesex County in a communication to the County Board of Elections in another matter advised that board to count all votes received from those in military service, whether duly registered or not, can have no binding effect upon the court in the instant case.

While it is not necessary to decide the question here, it is an opportune time to call to the attention of the legislature the fact that there is grave doubt whether under the present statutes those in the military forces are entitled to vote in municipal elections. The act *R. S.* 19:54–27; *N. J. S. A.* 19:54–27, refers alone to primary, general or special elections, under none of which can a municipal election be classified. Before the question can again arise, this discrepancy should be corrected.

For the foregoing reasons it is the judgment of the court that the contestant was duly elected as a city commissioner of the City of New Brunswick. A proper order may be presented annulling the certificate of election of the incumbent and providing that one be issued to the contestant in conformity with the statute.