429 P.2d 508

**Paul A. MILLET, Appellant,**

v.

**BOARD OF SUPERVISORS OF MARICOPA COUNTY, Maricopa County, School District No. 4 (Mesa Elementary) of Maricopa County, Appellees.**

**No. 1 CA–CIV 508.**

Court of Appeals of Arizona.
June 26, 1967.

Buckley & Turner, by William F. Turner, Mesa, for appellant.

Ellen Jane Rex Greer, Phoenix, Robert K. Corbin, County Atty., by Ralph Willey, Deputy County Atty., for appellees.

DONOFRIO, Judge.

This is an appeal by Paul A. Millet, plaintiff and contestant below, from an order granting judgment in favor of the Board of Supervisors of Maricopa County and School District No. 4, defendants and contestees. The action was initiated by plaintiff, a qualified elector and real property taxpayer of the district, to contest a school bond election authorizing the Board of Supervisors to sell general obligation bonds in the sum of $1,265,000 of Mesa Elementary District No. 4.

In February 1966 the Board of Supervisors called a special bond election on behalf of the District, which election was held on April 12, 1966. The results of said bond election were canvassed by the Board on April 25 and it found that of the total of 2,904 ballots cast, 28 were rejected for cause; 1,444 were "Yes" votes and 1,432 were "No" votes. The issue was declared carried by 12 votes.

On May 13, prior to the issuance of any bonds authorized at the election, plaintiff filed this contest asking that the election be declared a nullity and that the issuance of any bonds be enjoined. The basis for the contest was that defendants had failed to comply with the provisions of A.R.S., Section 35–451 et seq., with respect to the election.

As part of the contest the Court ordered a recount and inspection of the ballots. At this recount the Court found the election carried 1445 to 1432 and made its finding subject to further objection as to the qualification of the voters. By affidavits, searching of the general county and precinct voter registration lists, and consulting assessor's records, proof was made that of the voters appearing at the election and casting ballots, at least 50 were not qualified school bond electors as required by Article 7, Section 13 of the Arizona Constitution, A.R.S. which provides:

"Questions upon bond issues or special assessments shall be submitted to the vote of real property taxpayers, who shall also in all respects be qualified electors of this State, and of the political subdivisions thereof affected by such question."

Most of this unqualified group were either not registered or not real property taxpayers.

The method of conducting the election was to require persons presenting themselves to vote to sign an "Affidavit and Poll List" to the effect that such persons were registered voters in the State of Arizona, and real property taxpayers in Mesa Elementary District No. 4. There was no registered voters' list used to determine voter registration.

At the final hearing after submission of affidavits and other documentary proof relative to the eligibility of the voters, contestant and contestees each moved for summary judgment. The Court, after taking

the matter under advisement, rendered the following order:

"* * * THE COURT is of the opinion that the showing of the casting of illegal election ballots in and of itself is insufficient to invalidate an election and IS OF THE FURTHER OPINION that the contestant has failed to meet the burden of proof to show the election invalid.

"IT IS THEREFORE ORDERED granting Contestees Motion for Entry of Judgment."

Judgment was entered for contestees-defendants and this appeal followed.

■ We deal first with the issue raised by this appeal as to whether the use of the affidavit to the effect that the voter is registered and a real property taxpayer of the District and the failure to use voter registration lists is a sufficient compliance with the constitutional provision and laws relating to the election.

Contestant urges that by not using registration lists and merely requiring voters to sign the affidavit, contestees failed to comply with the law. In support he cites A.R.S. § 35–454, subsec. B which provides that a school bond election shall conform to the general election laws of the state, and A.R.S. § 16–102, which provides that no person shall be permitted to vote unless his name appears as a qualified elector in both the general county register and in the precinct register of the precinct in which he resides. He also urges that the election was improperly conducted in that the election officials failed to exercise sufficient care to ascertain if the voters were real property taxpayers of the District.

On the other hand, contestees contend there has been substantial compliance with the school bond election laws, and with the intent and spirit of § 35–454, subsec. B and the general election laws. We agree with contestees and would hold the affidavit procedure used constituted a reasonable compliance with the mandate of the law.

Although the procedure used to determine voter eligibility was not identical, we believe the reasoning on this point in Morgan v. Board of Supervisors, 67 Ariz. 133, 192 P.2d 236 (1948) is sound and applicable to the instant procedure. At the time of *Morgan*, the pertinent statutes were the same and the Court said:

"There is no means set up by the legislature to advise the election board who are real property taxpayers, i. e., no one is required to prepare or certify a poll list of taxpayers residing in the district. The board is therefore cast upon its own resources. It was obligated to determine if the person seeking to cast a ballot did in fact possess the constitutional qualifications. We believe the action of the board requiring each person, before voting, to certify that he was a real property taxpayer, or to present a current tax receipt, was not an unreasonable requirement but rather conformed with the spirit of the general election laws relative to the registration of voters. As a matter of fact, chapter 24, Session Laws of 1925, contained a provision that electors at a school bond election be required to present a tax receipt showing payment of taxes or an assessment notice before being permitted to vote. In the 1928 codification of the Revised Statutes of Arizona this provision was omitted. The statutes (section 10–604, A.C.A.1939) provide that in bond elections 'The election *shall* conform with the general election laws of the state'. (Emphasis supplied.) The word 'conform' as there used means 'to bring into harmony or agreement'. It does not mean identical. Webster's New International Dictionary, 2d Ed. (unabridged); Friend v. Hamill, 34 Md. 298; Finch v. McVean, 6 Cal.App. 272, 91 P. 1019; Mielcarek v. Riske, 74 N.D. 202, 21 N.W.2d 218."

Contestants have argued that voter registration lists and lists of property owners should have been obtained and used by the election officials. Had the Legislature so intended it could have so provided, but chose instead to use only language that the election "shall conform" with the general

**19**

election laws. We do not believe that by this language the Legislature intended to include by reference the registration procedures set out for primary and general elections. We are unable to find any duty to prepare voter registration lists or precinct registers except in connection with a primary or general election. See A.R.S. § 16–154. Because of the consequence of such a task in connection with bond elections, the duties of preparation of such lists are a subject for the Legislature.

A reading of the statutes providing for school bond elections (§ 35–451 et seq.) shows that the election may be ordered held on any day not less than thirty nor more than sixty days from the date of the order. Accordingly, the bond election could well take place, as it did herein, at a time when a current precinct register was not available. It is further to be noted that the Recorder compiles registrations according to election precinct boundaries in use at regular elections and not according to school district boundary lines. As to requiring lists of real property owners, contestant has urged use of the assessment roll. Here again the election took place before the Assessor had completed his current assessment roll. By law this is required to be done on or before May 20 of each year. A.R.S. § 42–239. We might add that property ownership quite often changes hands and there is no assurance that the lists would be correct. The affidavit procedure could well be more up to date and reliable, and it is equally as good as the certificate method approved in *Morgan*. We hold the affidavit procedure used constitutes a reasonable compliance with the mandate of the law.

█ Lastly, we consider whether the showing by contestant that ballots were cast by unqualified voters in excess of the number by which the election carried invalidates the election.

Simply stated, contestant urges that the election carried by 13 votes and that a showing that 14 or more of the votes cast were illegal is sufficient to defeat the election. The number of unqualified voters is uncertain, but the briefs assume the number to be more than 14—at the least, 50.

Contestees contend the showing of a certain number of unqualified voters does not suffice; that by such a showing contestant merely has established a portion of the burden of proof imposed upon him by law, and that in order to succeed in the action he has the further burden of establishing how the illegal votes were cast and that they materially affected the result of the election. We agree with contestees.

Although the facts in *Morgan* were different in that the question involved therein was whether certain voters (tax exempt widows and veterans) were improperly excluded from voting, whereas the instant question involves the inclusion of illegal votes in the total votes cast. The Supreme Court quoted the following with approval as the general rule of law:

" * * * the appellant has wholly failed to carry the burden of proof necessary to void this election. The rule is succinctly stated in 29 C.J.S., Elections, § 274:

" 'Legality of votes. Where an election is contested on the ground of illegal voting, the contestant has the burden of showing that sufficient illegal votes were cast to change the result, *and of showing for whom or for what they were cast.* Where the election is contested on the ground that the election officers erroneously rejected votes, the burden is on the contestant to show that such erroneous ruling materially affected the result. * * *' " (Emphasis ours.) 67 Ariz. 143, 192 P.2d 236.

█ Our Court, by the pronouncements in *Morgan*, is committed to the general rule of law that where an election is contested on the ground of illegal voting, contestant has the burden of showing that sufficient illegal votes were cast to change the result, and of showing for whom or for what they were cast. There was no evidence before the trial court showing how any of the assumed illegal voters voted.

 Every reasonable presumption shall be indulged in favor of the validity of an election and against voiding the election. We would hold that there is a substantial compliance with the laws governing the election and that the record sustains the order and judgment of the trial court that contestant failed in his burden.

Affirmed.

CAMERON, C. J., and STEVENS, J., concur.