101 N.J. Super. 163 (1968)
243 A.2d 832
APPLICATION OF JAMES T. MURPHY TO CONTEST THE ELECTION OF WILLIAM K. METTLER TO THE OFFICE OF COUNCILMAN-AT-LARGE OF THE CITY OF ENGLEWOOD, AND IN THE MATTER OF THE APPLICATION OF DOROTHY HEIR TO CONTEST THE ELECTION OF KENNETH KING TO THE OFFICE OF COUNCILMAN OF THE THIRD WARD OF THE CITY OF ENGLEWOOD, AND IN THE MATTER OF THE APPLICATION OF PETER M. ABEL TO CONTEST THE ELECTION OF ROBERT F. MILLER TO THE OFFICE OF MAYOR OF THE CITY OF ENGLEWOOD, PURSUANT TO N.J.S.A. 19:29-1, ET SEQ.
WILLIAM K. METTLER, INCUMBENT-APPELLANT,
v.
JAMES T. MURPHY, PLAINTIFF-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 6, 1968.
Decided May 24, 1968.
*165 Before Judges GAULKIN, LEWIS and KOLOVSKY.
Mrs. Sylvia B. Pressler and Mr. Michael L. Scherby argued the cause for appellant (Messrs. Okin, Pressler & Scherby, attorneys).
Mr. George S. Grabow argued the cause for respondent (Messrs. Grabow, Verp & Rosenfelt, attorneys).
The opinion of the court was delivered by KOLOVSKY, J.A.D.
At the general election held in the City of Englewood on November 7, 1967, Mettler, King and Miller were the Democratic candidates and Murphy, Heir and Abel, the Republican candidates for the offices of Councilman-at-Large, Councilman of the Third Ward and Mayor, respectively. The election returns showed the Democratic candidates to be the winners, Mettler by a majority of 17 votes, King by a majority of 376 votes and Miller by a majority of 136 votes.
A recount under N.J.S.A. 19:28-1 increased Mettler's majority by one, an increase which was cancelled when it developed at the trial of the instant action that an additional absentee ballot should be counted for Murphy.
On November 24, 1967, the three Republican candidates instituted this action contesting the election of Mettler, King and Miller on the ground that, allegedly, "illegal *166 votes [had] been received * * * sufficient to change the result." N.J.S.A. 19:29-1(e).
During the course of a lengthy trial of the election contest, the court ruled that 35 of the more than 10,200 votes cast in the city-wide election for Councilman-at-Large and Mayor were to be deemed "illegal" votes for the following reasons:
(a) Six, because the voters were disenfranchised by reason of criminal convictions.
(b) Seven, because the voters had moved from Englewood.
(c) Three, because the voters, whose present addresses were not proven, had moved from the addresses shown on the permanent registry records.
(d) Thirteen, because the voters, who were still residents of Englewood but had moved from the addresses shown on the registry records, had not filed the change of address notice called for by N.J.S.A. 19:31-11(a) and had voted in the district of their former residence. Of this group, one had moved to another address in the same district; ten, from one district to another district in the same ward; and two, to another ward.
(e) Six, because the total vote shown on the voting machines in the districts where they were cast exceeded the number of voting authorities issued.
The 35 votes adjudged illegal were insufficient in number to have any effect on the elections of King and Miller. Their elections as Councilman of the Third Ward and Mayor, respectively, were confirmed. Their opponents Heir and Abel do not appeal.
With respect to the election for Councilman-at-Large, the trial court concluded that since no evidence had been adduced to show for whom the illegal votes had been cast, it was unable to "determine for whom the invalid ballots were cast and * * *, [since] the number of invalid votes cast exceeded the difference in the vote between Mr. Mettler and Mr. Murphy by 18 votes * * * [it] would find that neither candidate is elected."
*167 Mettler appeals. We reverse. We are satisfied that even if the 35 votes were "illegal," the contestants have not established a case for voiding an election under N.J.S.A. 19:29-1(e).
Respondent concedes that neither fraud, corruption nor widespread illegality was shown. Cf. In re Hunt, 15 N.J. Misc. 331, 191 A. 437 (Cir. Ct. 1937); Burkett v. Francesconi, 127 N.J.L. 541 (Sup. Ct. 1942); In re Donahay's, 21 N.J. Misc. 360, 34 A.2d 299 (Cir. Ct. 1943). With but few exceptions, there is not even a suggestion that the voters whose votes have been judged illegal had known that they were not entitled to vote as and where they did. There is no proof that illegal votes were cast at Mettler's instigation or with his knowledge or consent. Cf. N.J.S.A. 19:3-9.
We hold that in such circumstances an election may not be voided, as it was here, merely on a showing that the successful candidate's majority was smaller than the number of illegal votes cast, without any attempt by the contestant to show for whom the illegal votes were cast.
When, as here, an election is contested on the sole ground that "illegal votes have been received * * * at the polls sufficient to change the result," N.J.S.A. 19:29-1 (e), the contestant has not only the burden of showing that illegal votes were cast in number sufficient to change the result if they had in fact been cast for the contestee, but also the burden of showing, to the extent possible under the circumstances, for whom the illegal votes were cast.
Such is the rule not only of the New Jersey cases but also of the weight of authority elsewhere. Lehlbach v. Haynes, 54 N.J.L. 77, 80 (Sup. Ct. 1891); In re Clee, 119 N.J.L. 310, 325 (Sup. Ct. 1938); Brueckman v. Frignoca, 9 N.J. Misc. 128, 132, 152 A. 780, 782 (Cir. Ct. 1930); cf. Miller v. Town of Montclair, 92 N.J.L. 292, 296 (Sup. Ct. 1919), affirmed o.b. 93 N.J.L. 472 (E. & A. 1919); Wilkinson v. McGill, 192 Md. 387, 64 A.2d 266, 274 (Ct. App. 1949); State ex rel. Brogan v. Boehner, 174 Neb. 689, 119 N.W.2d 147 (Sup. Ct. 1963); Millet v. Board of Supervisors *168 of Maricopa County, 6 Ariz. App. 16, 429 P.2d 508, 511 (Ct. App. 1967); see review of the authorities in In re Sugar Creek Local School District, 185 N.E.2d 809, 817 (Ohio Com. Pl. 1962); cf. Bishop v. Smith, 350 S.W.2d 494, 496 (Ky. Ct. App. 1961).
Lehlbach v. Haynes, supra, involved a petition contesting an election pursuant to a provision of the election law identical with that now found in N.J.S.A. 19:29-1(e) (see 54 N.J.L., at p. 78).
The court said:
"The contestant * * * insists that the statute only requires him to show illegal votes in number sufficient to change the result, if all be deducted from the incumbent's tally. We do not, however, so read the act. It makes the reception of illegal votes a ground of contest only when they are sufficient to change the result  that is, not merely to show that the plurality declared for the incumbent is erroneous, but to show that another than he was the person legally elected. Unless the petition states circumstances which prima facie render this conclusion probable, it does not present a case within the law. Roche v. Bruggemann, 24 Vroom 122. There are other modes of proof besides the affidavit of the voter, and the obstacles in the way are not usually insuperable without compulsory process. But, at any rate, the difficulties spring from the terms of the statute, in accordance with which we must proceed in this statutory investigation. The presumption is with the incumbent, and we cannot assume, without evidence against that presumption, that the illegal ballots were for him rather than his opponents." (at p. 81)
An exception to the rule has been recognized in cases where it is impossible to determine for whom the illegal votes were cast. Richardson v. Radics, 21 N.J. Misc. 466, 35 A.2d 425 (Cir. Ct. 1943), reversed on other grounds 131 N.J.L. 406 (Sup. Ct. 1944); In re Application of Dorgan, 44 N.J. 440 (1965).
In Richardson v. Radics, supra, the trial court, after ruling that 63 of 244 military absentee ballots were invalid because those casting them were not registered voters, held that the whole soldier vote should be rejected because the 244 ballots had been commingled so that it was impossible to segregate the *169 legal from the illegal votes. The appellate court did not reach the latter ruling since it determined that the 63 ballots were valid.
Dorgan presents an application of the exception noted. It does not, as respondent argues, support his contention that the only burden of a contestant is to show that illegal votes were cast in a number greater than the winner's margin of victory. In Dorgan, the contestant did attempt to meet his burden of proving for whom the illegal votes were cast. On the basis of the proofs adduced, as the Supreme Court's opinion notes,
"the court found that four such votes were cast for Pollotta reducing the vote for him to 3,108, the same number recorded for Dorgan, but found that one absentee ballot counted for Dorgan was invalid because, although the intent to vote for him was clear, the mark was placed just outside the square provided for it. The court felt it was obliged to disallow that vote under In re Keogh-Dwyer, 85 N.J. Super. 188, 204 A.2d 351 (App. Div. 1964), in which matter an appeal is now before us." (at p. 441).
The trial court in Dorgan found itself unable to determine for whom the remaining 21 illegal votes were cast. Six of these illegal votes represented an excess of votes recorded on the voting machine over "the number of persons who signed the voting books and the number of voting authorities issued." Fifteen were the votes of voters who were questioned as to how they had voted. To quote from the cited opinion:
"There were 15 additional illegal votes as to which the trial court concluded it was unable to say for whom they were cast. Some of those voters said they voted for Dorgan and some for Pollotta, but the trial judge, who had the benefit of seeing those witnesses, was not persuaded to credit their unsupported statements. Finally, the votes recorded on the voting machines exceeded by six the number of persons who signed the voting books and the number of voting authorities issued.
We think that upon this factual complex the trial court correctly concluded that neither candidate was entitled to a certificate of election and that the election be set aside." (Emphasis added) (at p. 441)
*170 We have noted that the trial court in the instant case ruled six votes invalid because the total vote shown on the voting machines exceeded the number of voting authorities issued. However, we conclude from our review of the record that the evidence is insufficient to support the court's determination that these six votes should be adjudged to be illegal votes. Contestants made no effort to prove, as their petition had alleged, that the vote exceeded not only the number of voting authorities issued but also "the number of persons signing the voting books." Further, we note that in the one district involving four of these votes  the other two were divided between two other districts  the vote cast for contestant Murphy was 490, that for appellant Mettler 321.
It may be conceded that the exception to the rule discussed supra is applicable to the six votes ruled illegal because of a deficit in voting authorities. However, the exception offers no justification for the contestants' failure even to attempt to prove for whom the other 29 votes were cast.
Proof as to how an "illegal voter" voted may take several forms. Upon a determination by the court that a voter is not qualified, he may be compelled to disclose for whom he voted. N.J.S.A. 19:29-7. Further,
"[c]ircumstantial evidence is admissible to prove for whom illegal votes were cast at an election. * * * Among the circumstances that may be considered are * * * [t]he party affiliations of the voter, and the relations between the voter and the candidates, or between him and others actively interested in advancing the cause of certain candidates, * * *." 26 Am. Jur.2d, Elections, § 348.
The contestants offered no evidence on the critical issue, circumstantial or otherwise. (The only circumstantial evidence that crept into the case, and this by reason of cross-examination by contestee's counsel, related to three disqualified voters, each of whom had in the past voted in the Republican primary. Two of them testified that they were employees of the City of Englewood which has not adopted *171 the Civil Service Law. The third testified that he had split his ticket and, although he remembered for whom he had voted in the case of two other offices, he could not remember whether he voted for Murphy or for Mettler as Councilman-at-Large.)
Further, the contestants expressly rejected the judge's continuing offer to compel each witness whose vote he had disqualified to disclose for whom he had voted. The same offer was then made to the contestees but we agree with them that they were under no obligation to accept it.
Apposite is what the Maryland court said in Wilkinson v. McGill, supra:
"The question is by no means free from difficulty, but we think the weight of authority and the better reasoning uphold the view that complainants, desiring to avoid an election because illegal votes are cast, have upon them the burden of proving for whom these votes are cast. They cannot thrust that burden upon the Court by arguing that there is a probability that such votes were cast for the side having the majority. They must prove, or at least attempt to prove, how the illegal voters voted. If direct proof cannot be obtained from the illegal voters themselves, other evidence of a circumstantial nature may be offered. In any event, there must be an effort to produce this proof. If an effort is made, which proves futile, and there is no way of producing proper evidence, it may be that the safest procedure is to throw out the election, but we have not that situation before us. As we have already said, the appellees in this case made no effort, either to prove how the illegal voters cast their ballots, nor to offer any explanation of their failure to do so. They did not state that such evidence was impossible for them to obtain. Under these circumstances, we must conclude that they have failed to meet the burden imposed upon them, and that the election must stand." (at p. 274)
The judgment is reversed and the matter remanded to the trial court with directions that judgment be entered in favor of appellant Mettler.